CORNIFF *v.* COOK.

| 95 | 61 |
|-----|-----|
| 97 | 256 |
| 95 | 61 |
| 99 | 245 |
| 99 | 456 |
| 95 | 61 |
| 101 | 137 |
| 95 | 61 |
| f107 | 144 |

1. A demurrer to a rule instituted in the city court of Atlanta having been overruled and no exceptions *pendente lite* having been filed, it was too late to assign as error the judgment overruling the demurrer, in a bill of exceptions sued out more than sixty days after the date of such judgment.

2. Where a constable, having in his possession an attachment against a private corporation, went to a house in which personal goods of the corporation were located, for the purpose of levying upon the same, made an inventory of the goods (they being at the time under his view, in his immediate presence, and constructively in his possession), informed the only servant of the corporation present that he had levied upon the property, and thereupon immediately went to the president of the corporation, who, upon being informed of what had been done, agreed with the officer that if the goods were not removed from the house the same should be held subject to the order and control of the officer, who shortly thereafter made an entry of levy upon the attachment, the levy was legally sufficient, although the constable did not take actual manual custody of the goods, or lock up the house or remove the goods therefrom.

3. The requests to charge relating to what would be necessary to constitute a valid levy were not applicable to the facts disclosed by the evidence, and there was no error in refusing the same; and the charges given upon this subject were pertinent and correct.

4. The law with reference to the burden of proof and the prepond-

erance of evidence was correctly stated by the presiding judge, and there was no error in refusing to charge that " the question whether the burden of proof has been carried is to be settled by looking at the number of witnesses testifying in favor or against certain facts, their demeanor on the stand, character, interest, etc."

5. The evidence warranted the verdict, and there was no error in denying a new trial.

November 12, 1894.

Rule against constable. Before Judge VAN EPPS. City court of Atlanta. July term, 1894.

The petition of Cook, a constable, showed, that a justice of the district where he served put in his hands an attachment sued out by Chamberlin, Johnson & Company against the Southern Travelers Club, a corporation of Fulton county, returnable to the March term, 1893, of the city court of Atlanta, for the purpose of having the same levied upon certain property, a schedule of which was annexed to the attachment, for the purchase money of said property; the indebtedness amounting to $405.42, with interest from April 9, 1892. Cook went to the club-rooms, seized the property described in the schedule, levied upon the same and made indorsement of such levy upon a piece of paper which he attached to the attachment. The property was in the hall and rooms of said club in charge of the janitor thereof, in whose charge Cook left the property, the janitor agreeing to keep the same for him, and requesting him to see Wellhouse, the president of the club, in regard thereto. Cook immediately sought Wellhouse and told him he had levied upon the property; whereupon Wellhouse said that if Cook would allow the property to stay in the rooms, it should not be disturbed and none of it should be removed, that the reason he did not wish it moved was because he wanted to have a meeting of the club to raise money to pay off the debt; and promised to keep the property for Cook, and in case the money was not raised, Cook could then remove

it. About a hour and a half after Cook had made the above levy, Corniff, constable of an adjoining district, undertook to levy upon the property, and closed up the doors of said hall and rooms, under several distress warrants. After this levy by Corniff, Cook demanded that Corniff turn over the property to him, which Corniff refused to do. Cook went back to the hall and found that the property had been removed therefrom. He then asked Corniff where the property was, and Corniff refused to tell him. Under said process Corniff posted notices and sold the property on the premises. Cook's attorney was about to give notice of the prior levy, when it was agreed between him and counsel for the creditor whose process was held by Corniff, that the property might be sold and the funds held until the questions should be settled by rule as to who was entitled to the proceeds of the sale. The property sold for $482, which sum is now in the hands of Corniff. Copies of the attachment, affidavit and levy by Cook are annexed. He prayed that Corniff be required to show cause why he should not turn over the proceeds of the sale to petitioner, to be held by him to answer such judgment as Chamberlin, Johnson & Company might recover against said club.

On this petition rule *nisi* was issued, returnable before the judge of the city court at chambers, the rule being issued February 27, 1893. A demurrer was interposed by Corniff, which was overruled on April 20, 1894. No exceptions *pendente lite* appear to have been entered. The bill of exceptions was certified by the judge on July 31, 1894. Corniff answered, in brief, that as constable he had placed in his hands several distress warrants, described; that armed with these, he proceeded to the rooms of the club and seized the goods in question (together with other goods); that said goods had not been levied on, and the club was running along as usual.

Cook filed a general traverse, and there was a verdict in his favor. Corniff moved for a new trial, and the motion was overruled.

MAYSON & HILL, for plaintiff in error.
GOODWIN & WESTMORELAND, *contra.*

LUMPKIN, Justice.

1. Upon the rule of practice announced in the first head-note, we will attempt no comment. The question involved is too well settled to require further notice at our hands.

2. The evidence as to what was done by the constable Cook when he went to levy the attachment sued out by Chamberlin, Johnson & Co. upon the property of the Southern Travelers Club, is somewhat complicated and confused; but after giving it a very thorough examination and study, we think a fair summary of its real purport and meaning is stated in the second head-note. Counsel for the plaintiff in error strenuously insisted that the porter of the club in charge of its property at the time Cook went to make the levy, could not, under the circumstances, become the agent of Cook to retain possession of the property; and further, that inasmuch as the constable did not take absolute manual possession and control of the goods, there should have been a joint promise by the porter and the president of the club to hold the property for the constable, in order to make the levy valid. Both of these contentions are, in our opinion, successfully answered by the fact that after the constable left the club-house, the president of the corporation agreed with the constable that if he would allow the property to remain where it then was, it should be held subject to the officer's order. The president was the *alter ego* of the corporation; and this being so, it is entirely immaterial whether the porter did or did not join with him in promising to hold for the constable;

and it is also of no consequence whether the porter, regarded as an agent of the corporation, could or could not become also the agent of the constable to keep the property for him.

The evidence of Wellhouse, the president of the club, as to what occurred between himself and Cook, at first glance, seems to conflict with the evidence of the latter, but upon a careful examination, it will appear that, at best, the statements of Wellhouse are (if not evasive) merely negative, and that he really does not deny the account of the transaction given by Cook. The question, therefore, is, taking Cook's version as correct, whether or not what he did in the premises amounted to a legal and valid levy? We think it did, and this position is well sustained by the most respectable authority. The evidence, as we understand it, shows that the constable, armed with the attachment, went to the clubhouse for the purpose of levying upon the goods of the corporation; that they were in his view, in his immediate presence, under his control, and constructively in his possession. He made an inventory of them, and then went to the president of the corporation, who agreed to hold the goods subject to the order and control of the officer. It was really at the instance of Wellhouse that this arrangement was entered into, he fearing the goods would be damaged if the officer insisted upon removing the same from the premises. Taking all the facts together, it amounted simply to this: that the officer left the property, to be kept for him, in the hands of the defendant in attachment. A few quotations from standard works will suffice to show that, under these circumstances, it was a good levy.

"In all cases, there must be something more than a mere pen-and-ink levy. It is not sufficient that the officer merely makes an inventory of the property and indorses the levy upon his writ. He must go where the

property is. He must have it within his view. It must be where he can exercise control over it. And he must exercise, or assume to exercise, dominion, by virtue of his writ. He must do some act by reason of which he could be successfully prosecuted as a trespasser, if it were not for the protection afforded him by the writ. But in order to make him responsible as a trespasser, it is not essential that he should remove the property, nor that he should touch it. It is enough that, having the property within his view, and where he can control it, he does profess to levy and to assume control of the property by virtue of the execution, and with the avowed purpose of holding the property to answer the exigencies of the writ; for one who to that extent assumes dominion over the goods of another is a trespasser, unless he is justified by a valid writ." 2 Freeman on Executions, §260, and cases cited. "The levy of an execution is the seizure by the officer of the debtor's property, under the writ, and the taking possession of it, or subjecting it to his control. In order to constitute a valid levy upon personal property, it must be within the view of the officer, and subject to his control at the time. Some of the courts seem to hold that there must be a manual seizure, and actual possession taken by the officer; but according to the weight of authority, it is sufficient if the property is under the control of the officer, and he may even leave it with the debtor to hold as his agent. He must, however, openly and unequivocally assert his title and right of dominion under the writ. The test generally adopted for determining the validity of a levy is this: Have the acts of the officer, in asserting his title to the goods under the writ, been such as would make him liable as a trespasser but for the protection afforded by the writ?" 7 Am. & Eng. Enc. of Law, 148, 149, citing numerous cases. To the same effect see Murfree on Sheriffs, §641, from which we make the

following extract: "As it would in many, probably most, instances, be highly inconvenient to the sheriff and to all concerned, for the officer to keep actual personal possession of chattels levied on, during the interim between the levy and the day of sale, the law provides that during that period the property may remain in other hands, due precaution being taken for its safety by bond or otherwise. If the sheriff chooses to leave the property in the hands of the defendant, he may do so, but it will be at his peril. So far as all others are concerned, creditors and subsequent purchasers, the levy will be good, unless there are other circumstances indicating fraud, which coexist with the fact that the defendant is, by the sheriff's appointment, the custodian of his own property." The following from the opinion of Frost, J., in Weatherby *v.* Covington, 3 Strob. 27, s. c. 49 Am. Dec. 623, is a very clear and pertinent statement of the law upon the question under review: "It is not necessary to a levy that the sheriff should actually seize and keep possession of the goods. It is sufficient if, the goods being in the possession of the defendant, and the sheriff having power to take them, with the consent of the defendant, he indorses a levy on the execution. The sheriff must, by some unequivocal act or declaration, assert his title to the goods, under the execution, so that the legal possession and control be manifestly transferred from the defendant to him. It is not material whether the right of possession be acquired by an actual exercise of official authority, or by the voluntary act of the defendant. A written acknowledgment of a levy is as effectual as an actual levy; and if the goods, in either case, remain in the possession of the defendant, he is the bailee of the sheriff."

It would be easy to cite many other authorities, but we are content to allow the correctness of our judgment to rest upon those above referred to, especially in view

of the fact that our own code (§2625) recognizes that a constructive seizure of personal property by a levying officer may be valid.

3. Following up the contentions which have been stated in the preceding division of this opinion, counsel for the plaintiff in error, at the trial below, presented to the judge certain requests to charge, embodying the views of counsel as to what would be necessary to constitute a valid levy. The refusal of the court to give these requests is complained of as error in the motion for a new trial. We find no merit in this complaint. Whatever may be said in support of the requests as abstract propositions of law, they were really not applicable to the facts of this case, as we gather them from the brief of evidence before us.

4. After charging the jury that the burden of proof was upon Cook to show to their reasonable satisfaction by a preponderance of the evidence that he did in fact effectually levy the attachment in his hands, the trial judge said: "The preponderance of evidence in a case is not alone determined by the number of witnesses testifying to a particular fact or set of facts. In determining, however, upon which side the preponderance of the evidence lays, the jury should take into consideration the opportunities of the witnesses for seeing or knowing the things about which they testify; their conduct and demeanor while testifying; their interest or lack of interest, if any, in the result of the suit; the probability or improbability of the truth of their several statements, in view of all the other evidence, facts and circumstances proved on the trial; and from all these circumstances, determine upon which side is the weight or the preponderance of the evidence." The court refused to give in charge to the jury a request, the material portion of which is copied in the fourth head-note. In view of the charge given, we have no hesitation in saying there

was no error in refusing the request, because the language adopted by the judge accurately conveyed to the minds of the jury all which the request, properly construed, ought to convey. If the purpose of the request was to have the jury understand that they were bound to believe two witnesses in preference to one, it would not do at all. The case of *Dowdell* v. *Neal,* 10 *Ga.* 152, relied upon by counsel for the plaintiff in error, will not support any such idea. It is true Judge NISBET said that if three witnesses were all free from suspicion and of *equal credibility,* then two of them were to be believed rather than the other who was in conflict with them; but, at the same time, he utterly repudiated the idea that the question of credibility is to be determined by mere numbers, and distinctly stated that the jury may, if they deem proper, believe one witness as against two or more. So, in the present case, the rule laid down by the court may be regarded as sufficiently clear and accurate to answer all practical purposes. See *Clark* v. *Cassidy, adm'r,* 62 *Ga.* 408, head-note 3, and also page 411.

5. As will have been seen by what has already been said, this court is satisfied that the évidence warranted the verdict. The trial judge very properly refused a new trial. We affirm the judgment all the more readily because the verdict is not only consistent with the law, but also with the real justice of the case. It is always to be regarded as fortunate when both law and justice coincide in bringing about the correct termination of a lawsuit. *Judgment affirmed.*