DANIEL *v.* ROYCE, trustee.

1. An indorsement in the following words upon a promissory note payable to the order of a named payee: "For value received ......... hereby assign and convey the within bond, together with all interest in and all rights under the deed securing the same, to ......... without recourse," though signed by the payee, does not pass out of him the title of the note nor deprive him of the right of bringing an action thereon in his own name.

2. Where a husband made a conveyance of land to his wife, reciting therein that it was subject to a deed to a third person previously made by the grantor to secure a specified sum which had been loaned to him, and the wife, being thus clothed with the title, borrowed money and gave her own promissory note for the same, intending to use a portion of such money in paying off the above

recited incumbrance, although this intention was known to the lender, and although the wife did in fact use a portion of the money borrowed by her for the purpose stated, she could not defeat a recovery by the lender upon the note, either in whole or in part, upon the ground that it was given for her husband's debt or for money with which to pay the same. Properly treated, the loan was one contracted by her for the purpose of discharging an incumbrance upon her own property, subject to which she had taken and accepted her husband's deed, and her so doing made the incumbrance her own debt.

3. Under the facts disclosed by the record, there was no error in directing a verdict for the plaintiff.

August 12, 1895.

Complaint. Before Judge REESE. Wilkes superior court. November term, 1894.

SAMUEL H. SIBLEY, for plaintiff in error.

W. M. & M. P. REESE, *contra.*

LUMPKIN, Justice.

This case presents only two questions requiring comment.

1. An action was brought by H. H. Royce, trustee, against Mrs. Rebecca M. Daniel, upon a promissory note executed and delivered by her and made payable to his order. Upon the back of the note was an indorsement in the words copied in the head-note, and the same was signed by Royce. He, however, retained possession of the note. It was insisted that, under these facts, he was not entitled to maintain an action upon it in his own name. This presents the question: What was the effect of that indorsement? At most, it cannot be regarded as amounting to anything more than a general indorsement in blank. An assignment to "........." is certainly not an assignment passing title to any particular person. If it is an assignment at all, it can have no operation further than to pass the title to the person who becomes the holder and owner of the instrument. If it never leaves the hands of the original holder and owner, the title cannot, by virtue of such an assignment,

pass out of him into any other person. We do not see
how these propositions can be successfully controverted;
and if not, it follows that an assignment like this is, as
above remarked, in effect neither more nor less than an
indorsement in blank. When we reach this point, there
is no further difficulty. It is well settled that one who
holds a negotiable promissory note indorsed in blank
has a right to sue upon it as the bearer. If the orig-
inal holder, after thus indorsing the paper, retains pos-
session of it, he is at least a bearer, and may bring his
action against the maker.

2. A note given by a married woman, the considera-
tion of which, pure and simple, is a debt due by her
husband, is certainly void. But it by no means follows
that she may not bind herself by a note given by her
for a loan of money with which to pay off an encum-
brance on her own property, although this encumbrance
may have been created by the husband himself before
she became the owner. In such a case, it makes no
difference at all that the lender knew the purpose for
which the money was borrowed. The policy of the law
is to forbid the wife from making herself in any manner
liable for the husband's debt as such; but there is no
good reason why a wife, when she becomes the owner
of property formerly belonging to the husband, may not
use her own means, or borrow money, for the purpose
of relieving the property of a lien of the existence of
which she fully knew when she accepted the husband's
conveyance. In such a case, she does not discharge the
lien because it represents the husband's debt, and the
consideration which moves her is not a purpose to re-
lieve him from the indebtedness, but to free her own
property from an existing encumbrance.

What is said above relates, of course, to transactions
absolutely *bona fide*, and not to those which are simply
colorable and entered into as mere contrivances to sub-

stitute the wife for the husband as the real debtor. Transactions of this latter kind will not, of course, bear the test of scrutiny and investigation, and will not be permitted to stand.

3. Under the facts of this case, there was nothing to suggest any device of the kind just indicated. Royce had no interest whatever in the debt which Daniel owed to Morton B. Henry, or in the deed given to secure its payment. From all that appears, the loan to Mrs. Daniel was made in absolute good faith. It may be that Royce's agent knew of the purpose for which the money was borrowed, but that of itself would not affect the validity of the transaction. The evidence clearly demanded a recovery by the plaintiff, and the court did not err in directing a verdict in his favor.     *Judgment affirmed.*