## REESE *v.* FIDELITY MUTUAL LIFE ASSOCIATION.

1. Where the application for a policy of life-insurance and the policy itself both stipulated, in effect, that the policy should not become binding on the association issuing it until the first premium had been actually received by the association or its authorized agent during the good health of the applicant, and that no agent of the association should have power to make, alter, or discharge contracts, or grant credit, and that no alteration of the terms of the contract should be valid unless such alteration should be in writing and be signed by the president of the association : *Held*, that the actual payment of the first premium during the good health of the applicant was a condition precedent to the liability of the association, and that no agent of the association could waive such condition.
2. Delivery is essential to the validity of a promissory note.

Argued December 19, 1899. — Decided July 10, 1900.

Action on insurance policy.    Before Judge Reid.    City court of Atlanta.    May term, 1899.

Mrs. Lucy L. Reese sued the Fidelity Mutual Life Association for the amount of a policy issued by it upon the life of her husband, T. B. Reese.    Upon the trial the evidence submitted in behalf of the plaintiff was, in brief, as follows: T. B. Reese applied to the defendant company for a policy of insurance on his life for $2,000, in favor of his wife, Lucy L. Reese.    The written application which was signed by him contained the following stipulations: "I hereby agree and bind myself as follows: . . that the policy issued hereon shall not become binding on the Association until the first payment due

thereon has been actually received by the Association or its authorized agents during my lifetime and good health; that no verbal statements, to whomsoever made, shall modify this contract, or in any manner affect the rights of the Association, unless the same be reduced to writing, and be presented and approved by the officers of the Association at the Home Office in Philadelphia, no agent or examiner having any power or authority to make or alter contracts, waive forfeitures, or grant credit; . . this application shall be the sole basis of the contract with the Association if a policy be issued hereon." On September 8, 1894, the association issued a policy as applied for, containing stipulations similar to those set out in the application and in terms making the application a part of the policy, a copy of the application being attached to it. The policy was sent to W. M. Reese, a soliciting agent of the association and a brother of T. B. Reese, at Thomasville, Ga., who received it about the 13th day of the same month. T. B. Reese was then living at New Holland Springs, Ga. On the 15th of the same month, W. M. Reese, in pursuance of an agreement with S. A. Loyless, State agent of the association, executed his promissory note, payable to Loyless or order, for the amount of the first premium due on the policy, and on the same date signed a receipt to T. B. Reese for the premium. This note was never delivered to Loyless, nor was he ever notified of its execution, so far as the evidence shows, but it was retained by W. M. Reese, who intended forwarding it soon, with some other papers, to Loyless. W. M. Reese kept the receipt and the policy for his brother. It appeared that T. B. Reese was in good health until the 16th or 17th of September, when he was taken sick, and that he continued ill until his death, which occurred on the night of the 26th of September. On the 25th of September J. A. Linton, the father-in-law of T. B. Reese, received a telegram from his daughter, Mrs. Reese, announcing the illness of her husband, and requesting him to come to New Holland Springs. Linton showed this telegram to W. M. Reese, who thereupon told him about T. B. Reese's insurance policy. Linton then paid to W. M. Reese the amount of the first premium, and W. M. Reese destroyed the note which he had executed to Loyless and which he had held up to that time. Linton took the policy and re-

ceipt, and had them in his possession at the time of the death of T. B. Reese. Some weeks after the death of T. B. Reese, Charles G. Beck, State agent of the defendant association, made a demand upon the plaintiff for the insurance policy, giving as a reason for demanding the policy that the company would never pay it, and tendered her the premium that had been paid. Upon this evidence the court granted a nonsuit, and the plaintiff excepted.

*King & Spalding* and *J. T. Pendleton*, for plaintiff.
*Hamilton Douglas, D. S. Craig*, and *J. C. Bond*, for defendant.

FISH, J. In the written application which was signed by the applicant he expressly agreed that it should be the sole basis of the contract with the insurance association, if a policy should be issued thereon, and that the policy should not become binding on the association until the first payment due upon it had been actually received by the association or its authorized agent during the good health of the applicant. The policy likewise contained the stipulation that it should not be binding until delivered during the good health of the applicant, and until the first payment due thereon had been made, and recited that the application, a copy of which was attached, was made part thereof. It is clear from these explicit and unambiguous terms of the contract between the applicant and the association that the latter merely entered into an executory agreement, the performance of which absolutely depended upon the contingency that the first premium on the policy should be actually paid during the applicant's good health. This prerequisite had to be complied with before the policy could become effectual. In Ormond v. Fidelity Mutual Insurance Association, 96 N. C. 158, it was decided that, "Where an application for a life-insurance policy declares on its face that the payment of the premium is a condition precedent to the issuing of the policy, the policy is not in force until the premium is actually paid." And in Oliver v. Mutual Life Ins. Co. (Va.), 33 S. E. Rep. 536, the court held that "An applicant's express agreement, in his written application, that the policy should not take effect until the first premium was paid, and the policy delivered during his continuance in good health, created a condition precedent to the com-

pany's liability." The contract as expressed in the application and the policy established the respective rights and obligations of the parties, and this court has no power to alter its provisions and to declare a liability under a state of facts which the parties never agreed should fix it. As was said by Mr. Justice Little, in *Lippman* v. *Insurance Co.*, 108 *Ga.* 391; "A contract of insurance is governed by the same rules of interpretation as extend to other contracts; and when parties incorporate terms or stipulations in their contracts, it is not the province of the court to extend or enlarge them, but, in construing them, to give expression to the true intent of the parties, and in so doing the language used is the best criterion of intention."

The controlling question in this case is, did the applicant comply with the essential condition upon which the association's liability depended—in other words, was the first premium actually paid during his good health? Counsel for plaintiff in error contended here, in argument and by brief, that "The execution by W. M. Reese of his note to the defendant's agent, Loyless, in pursuance of his previous agreement with the company through Loyless, was a good payment of the premium." The applicant, it appears, was in good health at the date of this note, and if it amounted to a payment of the first premium, then the policy became binding on the association. Even if Loyless, whose powers to bind the association were not otherwise indicated than by being denominated its "State agent," had been vested with authority to alter the terms of the contract, so as to accept the note of W. M. Reese, the soliciting agent, in lieu of cash, for the first premium, we do not think the note claimed to have been executed in this case would have constituted a payment. The proof was to the effect that the note was filled out and signed by W. M. Reese on September 15, that he kept it in his possession for about ten days, intending to forward it to Loyless with some other premiums, that it was never sent, nor was Loyless ever notified of the fact that the note had been signed. W. M. Reese testified that he destroyed the note upon its payment by Linton, the applicant's father-in-law, the day before the applicant died. In our opinion these facts did not constitute a delivery of the note, and it was, therefore, never duly executed and was a nullity. A delivery, actual or con-

structive was as essential as the maker's signature. "No contract arises upon a bill of exchange or promissory note until the delivery of the instrument, and until such delivery, it remains revocable and unenforceable. Thus a promissory note has no inception until it has been delivered by the maker to the payee." 4 Am. & Eng. Enc. L. (2d ed.) 201. "While actual or manual delivery is not indispensable to the validity of a note, still it must appear that the maker, in some way, exercised an intention to make it an enforceable obligation against himself according to its terms, by surrendering control over it, and intentionally placing it under the control of the payee, or of some third person for his use." Purviance *v.* Jones, 120 Ind. 162. See 1 Daniel, Neg. Inst. § 63 et seq.; Parsons, Notes and Bills, § 49; Tiedeman, Com. Pap. § 34. The payment of the sum of money by Linton to W. M. Reese could not be in satisfaction of the note which the latter claimed to have made to Loyless, for the reason that such note, for want of delivery, never became operative. It seems to have been an anomalous transaction for Reese to have written out and signed a note payable to Loyless, to have kept it in his possession without notice to Loyless that it had been made, and for Linton to have paid Reese the amount of Reese's own note, and such a payment to have been designated as a satisfaction of the note.

Another contention of the plaintiff in error was, that the agents of the association, Loyless and Reese, waived the condition of payment of the first premium by becoming responsible therefor to the association. *Mechanics & Traders Ins. Co.* v. *Mutual Building Assn.*, 98 *Ga.* 262, and *Fireman's Fund Ins. Co.* v. *Pekor*, 106 *Ga.* 1, were cited in support of this contention. . In both of those cases it appears that the agents who dealt with the assured were general agents, who had authority to issue and deliver policies and renewals thereof, and that, according to the course of dealing between them and their customers, it was usual for them to issue renewals and charge the premiums to themselves and afterwards to account with the companies they represented. The rulings made in those cases were, therefore, based upon the implied assent of the insurance companies for such general agents to waive the payment of the premiums in cash for the renewal policies. There

was no pretense in either of those cases that the authority to make the waiver had been expressly withheld from the agent, as was done, both in the application and in the policy, in the case at bar.　Here there was no evidence of any custom, or course of dealing upon the part of Loyless and W. M. Reese, which could warrant an inference that the association impliedly assented that they might become responsible to it for the first premium, in order that credit might be extended to the applicant.　Under the express terms of the agreement in this case, the agents had no authority to make such a waiver.　The policy declared that " No agent of the association has any power or authority to make, alter, or discharge contracts, waive forfeitures, or grant credit; and no alteration of the terms of this contract shall be valid, and no forfeiture hereunder shall be waived, unless such alteration or waiver be in writing, and be signed by the President of the Association ; " and the application contained substantially the same provisions.　More distinct and unequivocal language could hardly have been used to express the mutual understanding of the parties to the contract.　The applicant was an intelligent business man; he signed the application ; and in the absence of any want of opportunity to read it, or of any suggestion of fraud practiced upon him, it must be conclusively presumed that he fully understood the entire transaction.　Furthermore, his brother, W. M. Reese, the soliciting agent, who was acting for him in endeavoring to arrange the payment of the first premium, certainly knew the contents of the application which he took and of the policy he had in his possession, and was fully aware that neither he nor Loyless had authority to grant credit for the first premium, or in any way to alter the terms of the contract agreed upon between the applicant and the association.　It is a familiar rule that a principal may limit the power of his agent, even within the apparent scope of his authority, so that the agent can not, in violation of the restriction, bind his principal, when dealing with one who has notice of the limitation.　Here the applicant expressly agreed in writing that no agent of the association should have authority to grant credit, and no alteration of the terms of the contract of insurance should be valid unless in writing and signed by the president of the association, and there

was no pretense that the president ever signed such a writing. If, in violation of these specific provisions of the contract, it were held that the agent of the association could vary its terms and grant credit for the first premium, instead of requiring its payment in cash, then must we subscribe to the rule, which seems to be supported by some adjudicated cases, that an insurance agent, unlike all other agents, may bind his principal, though acting contrary to express instructions, and dealing with one who has full knowledge of the limitations of his authority. The soundness of such a doctrine does not commend itself to our minds. "It must not be thought that the established rules of the law of agency do not apply to the transactions of life-insurance companies. There is no particular sanctity about the business of life or any other kind of insurance. The companies engaged in it have the right to employ agents and give to them such authority as they please; whatever limitations are imposed upon such agents, if communicated to those dealing with them, will be binding, and if this authority be exceeded, the act will not bind the principal. On the other hand, if the agents are held out to the public as possessing certain powers, their acts within the apparent scope of this authority will bind their principals. While the business of life-insurance has its recognized peculiarities, the courts have constantly endeavored to apply to all the transactions of fire and life-insurance organizations, or mutual benefit societies engaged in doing a life-insurance business, the general doctrines of the law of agency. The inquiry is: What was the contract entered into by the parties? If made through an agent, what was the authority of the agent, and had the party dealing with him any notice of limitations or restrictions upon such authority, or were there sufficient circumstances to put him on his guard and to require him to acquaint himself with this actual authority?" Bacon, Ben. Soc. & Life Ins. §151. See also §§ 152, 153, 154, 155, 158.

In Conway v. Phœnix Mut. Life Ins. Co., 140 N. Y. 79, the court held: "No different rules apply to contracts of insurance from those which obtain in the case of other contracts; and where the parties have deliberately and formally executed a contract for the purpose of defining their respective engagements

and securing due and exact performance thereof, they should be held to the same, and the only cases in which recoveries have been permitted contrary to the provisions of the contract are where it has been shown that there has been such a usage or course of business, or such consent, express or implied, as to justify the inference that the insurer had extended its agent's authority and thus modified the restrictions contained in the policy." In 1 Joyce on Insurance, § 433, the author says: "It is undoubtedly within the power of the parties to stipulate that an agent's authority shall be exercised only within certain limits. It is equally true that an insurance company may validly, as between itself and its agent, define and limit his powers, and this will affect all third persons, dealing with an agent, who have knowledge or notice thereof." In Wood, Ins. § 411, it is said: "In all cases where the assured has notice of any limitation upon the agent's power, or where there is anything about the transaction to put him on inquiry as to the actual authority of the agent, acts done by him in excess of his authority are not binding, as where it is generally known that limitations are imposed in certain respects. So, where direct notice, or any notice which a prudent man is bound to regard, is brought home to the assured, limiting the powers of the agent, he relies upon any act in excess of such limited authority at his peril. That an insurance company has a right, in a fair way, to limit the powers of its agent, must be conceded; and when it does impose such limitations upon his authority, in such a way that no prudent man might be mistaken in reference thereto, it is not bound by an act done by its agent in contravention of such notice." Ib. §§ 414, 416, 417. In this connection, see 1 May, Ins. § 137 a; Cooke, Life Ins. §§ 894, 1062, 1081; Ostrander, Ins. 36; and the numerous cases cited in support of the text by these various authors. See also *Fowler* v. *Ins. Co.*, 100 *Ga.* 330; *Morris* v. *Ins. Co.*, 106 *Ga.* 461; *Fireman's Fund Ins. Co.* v. *Rogers*, 108 *Ga.* 191; and the recent case of Murphy *v.* Ins. Co. (La.), 29 Ins. Law J. 210.

In New York Life Ins. Co. *v.* Fletcher, 117 U. S. 519, Mr. Justice Field, in the course of his opinion, made use of the following expressions: "The company, like any other principal, could limit the authority of its agents, and thus bind all parties

dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed." "The present case is very different from Ins. Co. *v.* Wilkinson, 13 Wall. 222, and from Ins. Co. *v.* Mahone, 21 Wall. 152. In neither of those cases was any limitation upon the power of the agent brought to the notice of the assured." "Here the power of the agent was limited, and notice of such limitation given by being embodied in the application, which the assured was required to make and sign, and which, as we have stated he must be presumed to have read. He is therefore bound by its statements."

Counsel for plaintiff in error also insisted that, as to the delivery of the policy, W. M. Reese was the general agent of the association, and that his acceptance of the premium from, and delivery of the policy to, Linton for the benefit of the plaintiff, with full knowledge of the applicant's illness, bound the association. If correct in what we have already said, then this contention can not be sound. So far as the evidence discloses, W. M. Reese was not the general agent of the association; but even if he had been, he could not, in the very teeth of the express limitations upon his power as agreed to by the applicant, have bound the association by delivering the policy in violation of the contract. The mere fact that the agent knew at the time he received the premium from Linton — who, by the way, was an entire stranger to the contract between the applicant and the association — and delivered the policy to him, that the terms of the contract were being violated, could not affect the liability of the association. Applying the law, as we conceive it to be, to the evidence submitted by the plaintiff upon the trial, we conclude that she was not entitled to a recovery, and therefore the court did not err in granting a nonsuit.

*Judgment affirmed. All the Justices concurring.*