EVANS, administrator, *v.* LUCE *et al.*

No. 13301.   MAY 17, 1940.   REHEARING DENIED JUNE 14, 1940.

*W. H. Harris,* for plaintiff.

*Mathews & Mathews, George B. Culpepper,* and *Clarence W. Walton,* for defendants.

DUCKWORTH, Justice. ■ The overruling of plaintiff's demurrer to the amendment on December 10, 1936, having been duly excepted to pendente lite, and error assigned on that ruling in the bill of exceptions, it is properly presented to this court for review. The other rulings on demurrers not having been excepted to in time (Code, §§ 6-701, 6-902, 6-905), no ruling can be made thereon. *Corniff* v. *Cook,* 95 *Ga.* 61 (22 S. E. 47, 51 Am. St. R. 55) ; *Willbanks* v. *Untriner,* 98 *Ga.* 801 (25 S. E. 841) ; *Shuman* v. *Smith,* 100 *Ga.* 415 (28 S. E. 448) ; *Summerour* v. *Pappa,* 119 *Ga.* 1 (45 S. E. 713) ; *Stewart* v. *Randall,* 138 *Ga.* 796 (7) (76 S. E. 352) ; *Kelly* v. *Collins & Glennville Railroad Co.,* 154 *Ga.* 698 (115 S. E. 67). "Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action." Code, § 37-1007; *Jefferson Banking Co.* v. *Trustees of Martin Institute,* 146 *Ga.* 383 (91 S. E. 463) ; *Hermann* v. *Mobley,* 172 *Ga.* 380 (2) (158 S. E. 38). See also *Brumby* v. *Board of Lights & Waterworks,* 147 *Ga.* 592 (3) (95 S. E. 7) ; *Hiers* v. *Exum,* 158 *Ga.* 19 (3) (122 S. E. 784) ; *Spinks* v. *LaGrange Banking & Trust Co.,* 160 *Ga.* 705 (129 S. E. 31) ; *Ferrell* v. *Wight,* 187 *Ga.* 360

(*200 S. E. 271*) ; *Dobbs* v. *Federal Deposit Insurance Corporation,* 187 *Ga.* 569 (1 S. E. 2d, 672). It is not required that in order to be a proper party one must be interested in all the matters and issues involved in the suit. *O'Jay Spread Co.* v. *Hicks,* 185 *Ga.* 507 (195 S. E. 564). On application of the foregoing principles, the demurrer was properly overruled, and the new parties made as prayed. The exception to the overruling of the motion to sever, subsequently made, is controlled adversely to movant by the above ruling.

■ This is a suit by an alleged indorsee on notes payable to order and bearing the signature of the payee on the back thereof. The defense denies the plaintiff's title to the notes, and sets up valid defenses against the payee. The first question to be decided is what under the law constitutes "negotiation." In order for the plaintiff to recover it must be shown that she is the owner of the notes sued on, which ownership can be acquired only by a valid negotiation of such notes. Our statute is explicit in defining what constitutes negotiation of such notes. The Code, § 14-401, declares: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, *completed by delivery.*" (Italics ours.) The notes here involved, being payable to order, are negotiated by "the indorsement of the holder, completed by delivery." There is no dispute that A. J. Evans, the payee, signed his name on the back of each of the notes; but the legal question presented is whether this within itself was sufficient to pass title. The language of the statute expressly declares that in addition to such indorsement there must be a delivery; and it is apparent that there is no negotiation until the indorsement is followed by delivery, as the statute in defining what constitutes negotiation asserts that after the indorsement the negotiation is completed by delivery. An indorsement never constitutes negotiation, and an attempt to negotiate a note payable to order by the indorsement of the holder is incomplete, and, if stopped here, there is no negotiation and title remains in the holder. *Daniel* v. *Royce,* 96 *Ga.* 566 (23 S. E. 493) ; *Reese* v. *Fidelity Mutual Life Association,* 111 *Ga.* 482 (2) (36 S. E. 637) ; *Underwood* v. *Craven,* 142 *Ga.* 658 (83 S. E. 520) ; *Dement* v. *Rogers,*

144 *Ga.* 760 (87 S. E. 102.7) ; *Hewett* v. *Bluthenthal & Bickart Inc.*, 146 *Ga.* 634 (92 S. E. 56) ; *Bell* v. *Whitestone*, 18 *Ga. App.* 536 (89 S. E. 1050) ; *Baggs-Langford Motor Co.* v. *Moore*, 36 *Ga. App.* 788 (3) (138 S. E. 256) ; *State* v. *Industrial Acceptance Corporation*, 37 *Ga. App.* 253 (139 S. E. 577) ; *Willoughby* v. *Newman*, 46 *Ga. App.* 377 (167 S. E. 783) ; *Staples* v. *Heaton*, 55 *Ga. App.* 495 (190 S. E. 420) ; 11 C. J. S. 97, § 660.

The evidence bearing upon the question of negotiation is as follows: Norris, witness for the plaintiff and former employee of her husband, testified: "I prepared the list of transfers. I delivered to Mr. C. L. Shepard, Mr. Evans' attorney, the twenty A. L. Luce notes of $125 each, due October 1, 1927, to May 1, 1929, inclusive. . . The twenty Luce notes had been transferred to Mrs. A. J. Evans. . . When a receiver was appointed for Mr. Evans, I did not include the Luce notes, because they had already been assigned at that time." Mr. Harris, an attorney for the plaintiff, testified: "Mr. Evans employed me to represent Mrs. Evans, and he told me of the attempt to have these notes set off, and that he had refused." A. J. Evans testified: "I transferred these Luce notes to Mrs. Evans because she held a deed to secure debt to the property. . . I did not list these Luce notes among my assets turned over to the receiver, because they belonged to Mrs. Evans. . . The Luce notes were transferred to Mrs. Evans on the date I indorsed my name on them. They were transferred in Mr. Shepard's office. All the details of these transfers were carried out by Mr. Norris and Mr. Shepard in the latter's office. I don't know the date Mrs. Evans knew of the transfers, but I told her about it, and told her the rent notes would protect her. Mrs. Evans never had these notes in her possession, but Mr. Shepard had them, and her records were kept separate. Mrs. Evans was not present when I transferred the Luce notes to her. Mr. Shepard negotiated Mrs. Evans' loan with Brown Brothers. I requested him to do it. Mrs. Evans borrowed some money from Brown Brothers, putting up as collateral some oil-mill stock and other property and these Luce notes with the security deed, is my recollection." The plaintiff introduced in evidence the note for $10,000, payable to Watt P. and Marvin T. Brown, representing the loan referred to by Evans, which recited that the collateral deposited with the payees was as follows: "Note A. J. Evans to Max L. James, dated Oct. 22nd,

1921, due Oct. 22nd, 1921, for $7,000 principal, and transferred by Max L. James to Willie Belle Evans, together with deed to secure debt, securing payment of the same, bearing same date and recorded clerk's office Houston superior court in book 29, page 210, on Oct. 24, 1921, said deed to secure debt being duly transferred to Willie Belle Evans; and same conveying property on east side of Macon Street, Fort Valley, Georgia."

A careful examination of the foregoing evidence will disclose a total absence of any proof of delivery to Mrs. Evans. The reference by Evans to the Brown loan, wherein he testified that according to his recollection Mrs. Evans gave these notes as collateral to that loan, is completely answered and refuted by the written evidence of that loan, which recites the collateral and makes no mention of these notes as a part of that collateral. No fair inference of delivery can be drawn from his testimony that Mr. Shepard had the notes, and that "her records were kept separate." On the other hand, he testified positively that "Mrs. Evans never had these notes in her possession." It can not be said that this evidence shows a delivery of the notes to C. L. Shepard as agent or attorney for Mrs. Evans, because the only testimony indicating whose attorney Mr. Shepard was at the time of delivery to him is that of Norris, who said, "I delivered to Mr. C. L. Shepard, Mr. Evans' attorney, the twenty A. L. Luce notes of $125 each." From all this evidence the only inference justified is that after indorsing the notes the payee, A. J. Evans, delivered them to his attorney, C. L. Shepard, in which event Shepard's possession was the possession of A. J. Evans. There is nowhere in the record a word of evidence that Mrs. Evans accepted the notes or consented that they be transferred to her, nor is there any evidence that she designated an agent and authorized delivery of the notes to such agent. Mr. Evans testified that she was not present when he indorsed the notes, and that she knew nothing about it until he informed her some time later. There is nothing to indicate that she consented to accept them when informed of the transfer by her husband. So far as this record shows, A. J. Evans at all times subsequent to entering his indorsement retained possession and control of the notes. The importance of the provisions of the statute requiring delivery to complete negotiation is vividly demonstrated by the facts in this case. Relying upon the continued ownership by A. J. Evans of these

claims against it, the corporation, which had assumed liability for their payment, had purchased notes against Evans in approximately the same amount, feeling thus assured of the payment of such notes. No secret transfer from the husband to his wife should enable him to avoid payment of his own obligations and at the same time collect from his obligee, unless such transfer meets every essential requirement of the law applicable. The voice of Mrs. Evans is not heard throughout the transactions, and no independent act of hers in connection therewith is shown by this record. It must be held that the evidence demanded the verdict in favor of the defendants, because the evidence not only fails to show delivery, but, on the contrary, positively shows no delivery. The presumptions in favor of a holder and against an indorser who has parted with possession, provided in the Code, § 14-216, do not support the position of plaintiff in this case, for the reason that she is not shown to be the holder, nor has the indorser parted with possession. The rule stated in *Paris* v. *Moe*, 60 *Ga.* 90, that production of the note at the trial is prima facie evidence that the plaintiff acquired it bona fide and for value, can not be applied here. While the notes sued on were produced on the trial, yet A. J. Evans, the payee and alleged indorser, as administrator of the estate of Mrs. Evans, was by order of court made party plaintiff, and his production of the notes on the trial is just as consistent with his continued possession as it is with his possession as her representative. No evidence was produced to show that the notes were found in her effects after her death, and no attempt was made to explain or answer the positive testimony of Mr. Evans that she had never had possession of these notes. "The production of the notes upon the trial will in ordinary cases raise the presumption that the state of facts which authorized the plaintiff to prosecute the suit in his name existed at the time the suit was commenced; yet the defendant may rebut this presumption and defeat the action by showing conclusively that the state of facts existing at the time the suit was instituted did not authorize the plaintiff to sue." 11 C. J. S. 92, § 659.

Since the verdict in favor of the defendants was demanded, no ruling will be made upon the special grounds of the motion for new trial, which attack portions of the charge, the admissibility of evidence not related to the issue on which the verdict was demanded, and the sufficiency of the evidence.

*Judgment affirmed. All the Justices concur.*