1. The amendment asking that A. J. Evans be made a party plaintiff and that E. M. Sammons be made a party defendant was not subject to demurrer, and the order making them parties was properly entered. The demurrers to other amendments having been overruled, and no exception pendente lite having been filed, it was too late to assign error on the judgments overruling them, in a bill of exceptions sued out more than sixty days after the date of such judgments.
2. Since the undisputed evidence shows that the notes sued on, although payable to A. J. Evans or order and indorsed in blank by the payee, were never delivered to the plaintiff, and the defendant denied the plaintiff's title to the notes and set up a valid defense to the notes as against the payee, the verdict in favor of the defendant was demanded.
3. Where the evidence demands the verdict, no ruling will be given on exceptions to rulings made during the progress of the trial on matters unrelated to that evidence.
 No. 13301. MAY 17, 1940. REHEARING DENIED JUNE 14, 1940. *Page 404 
Mrs. A. J. Evans sued A. L. Luce on twenty promissory notes made payable to A. J. Evans or order, and indorsed in blank by A. J. Evans, which notes contained the recital that they were for rent of a garage building on Macon street. Before the trial term the plaintiff died, and A. J. Evans as administrator of her estate was by proper order of the court made party plaintiff. The defendant filed his answer, which was subsequently amended four times, in which it was denied that plaintiff was the owner of the notes sued upon, and alleged that A. J. Evans was insolvent when he indorsed the notes; that they were given for the rent of a garage building in Fort Valley; that in February, 1926, after the execution of the notes by the defendant, his automobile agency, which occupied the rented building, was incorporated; that it was agreed between the corporation, the defendant, and A. J. Evans, payee of the notes, that the corporation would assume liability for the payment of the notes; that pursuant to this agreement the corporation paid the rent notes monthly thereafter through the month of August, 1927; that in December, 1926, the corporation purchased two notes against A. J. Evans, one for $800 and the other for $1510.60; that after the payment of the note for August, 1927, the corporation refused to pay the remainder of the rent notes (the twenty notes sued on in this case), which were approximately equal in amount to the notes held by the corporation against the payee of those notes; that in July, 1929, Mrs. A. J. Evans purchased the rented premises at a foreclosure sale, and in August of the same year the corporation entered into a lease contract with her for a period of three years beginning July 1, 1929; that no effort was made to collect the notes by either A. J. Evans or Mrs. Evans from July, 1927, to December, 1934; that when the lease with Mrs. Evans was made in August, 1929, an agreement was reached between the corporation and A. J. Evans, whereby the notes held by the corporation were set off against the rent notes, and all of the rent notes were thereby settled, paid, and fully satisfied; that in December, 1934, when the corporation made application for dissolution, objections were filed in the name of Mrs. A. J. Evans asserting that she was the owner of the notes, which objections were verified by an affidavit of A. J. Evans; and that during the same *Page 405 
month a distress warrant against the corporation was sued out in the name of Mrs. Evans for the collection of the notes here sued on. The distress warrant was levied on property of the corporation, and an eventual condemnation money bond was given, but the distress warrant and the levy thereunder were dismissed by the plaintiff during the pendency of the present suit when the defendant made a motion to consolidate that proceeding with the present suit.
By one amendment the defendant set out in detail a full description of the two notes held by the corporation against A. J. Evans, and alleged that on August 16, 1929, A. J. Evans, E. M. Sammons, and the defendant met in the offices of the corporation for the purpose of executing a new lease with Mrs. Evans and adjusting all differences on past rents, and A. J. Evans at this meeting recognized that the notes here sued on had been paid. This amendment further contained allegations of the incorporation of the Fort Valley Motor Company (the "corporation" referred to above), its assumption of liability for the rent notes, the agreement of A. J. Evans, then the owner of the notes, to such assumption; that from that date, February, 1926, until March, 1936, no demand was ever made of the defendant by A. J. Evans or any other person for payment of the notes; that upon the dissolution of the corporation in 1934 E. M. Sammons became the owner of the assets, and he is liable for the debts of the corporation; that A. J. Evans was the husband of Mrs. Evans; that his indorsement on the notes was fraudulent, without consideration, and for the purpose of defeating the claim of the corporation on the two notes which it held against him; that the notes and the lease contract are still the property of A. J. Evans; and that the distress warrant against the corporation was still pending in the superior court of Peach County; and it was prayed that A. J. Evans be made a party plaintiff, and E. M. Sammons be made a party defendant, and the two actions be consolidated. The plaintiff demurred to the amendment, on the grounds that there was no equity in it, and that no reason appeared therein why Sammons and A. J. Evans should be made parties or that the two actions should be consolidated. This demurrer was overruled on December 10, 1936, and the parties were made as prayed; but the cases were not consolidated, because the plaintiff in the meantime dismissed the distress-warrant proceeding. To the judgment *Page 406 
overruling the demurrer and making parties the plaintiff excepted pendente lite, and error is assigned thereon in the present bill of exceptions. On September 7, 1937, the defendant filed another amendment, which was demurred to by the plaintiff, and the demurrer was overruled on the same date. No exceptions pendente lite were filed, but error is assigned in the bill of exceptions, which was approved July 19, 1939. On September 8, 1937, another amendment was offered by defendant, to which the plaintiff filed a demurrer which was overruled, and no exceptions pendente lite were filed, but error is assigned thereon in this bill of exceptions. On September 9, 1937, at the conclusion of the evidence, the plaintiff moved to strike the names of A. J. Evans and E. M. Sammons as parties, which motion was overruled, and error was assigned thereon in the motion for new trial. On September 9, 1937, the jury returned a verdict in favor of the defendant. A motion for new trial was overruled, and the plaintiff excepted.
1. The overruling of plaintiff's demurrer to the amendment on December 10, 1936, having been duly excepted to pendente lite, and error assigned on that ruling in the bill of exceptions, it is properly presented to this court for review. The other rulings on demurrers not having been excepted to in time (Code, §§ 6-701, 6-902, 6-905), no ruling can be made thereon. Corniff v. Cook, 95 Ga. 61 (22 S.E. 47, 51 Am. St. R. 55); Willbanks v. Untriner, 98 Ga. 801
(25 S.E. 841); Shuman v. Smith, 100 Ga. 415 (28 S.E. 448);Summerour v. Pappa, 119 Ga. 1 (45 S.E. 713); Stewart v.Randall, 138 Ga. 796 (7) (76 S.E. 352); Kelly v. Collins Glennville Railroad Co., 154 Ga. 698 (115 S.E. 67). "Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action." Code, § 37-1007; Jefferson Banking Co. v. Trustees ofMartin Institute, 146 Ga. 383 (91 S.E. 463); Hermann v.Mobley, 172 Ga. 380 (2) (158 S.E. 38). See also Brumby v.Board of Lights Waterworks, 147 Ga. 592 (3) (95 S.E. 7);Hiers v. Exum, 158 Ga. 19 (3) (122 S.E. 784); Spinks v.LaGrange Banking Trust Co., 160 Ga. 705 (129 S.E. 31);Ferrell v. Wight, 187 Ga. 360 *Page 407 
(200 S.E. 271); Dobbs v. Federal Deposit InsuranceCorporation, 187 Ga. 569 (1 S.E.2d 672). It is not required that in order to be a proper party one must be interested in all the matters and issues involved in the suit. O'Jay Spread Co.
v. Hicks, 185 Ga. 507 (195 S.E. 564). On application of the foregoing principles, the demurrer was properly overruled, and the new parties made as prayed. The exception to the overruling of the motion to sever, subsequently made, is controlled adversely to movant by the above ruling.
2. This is a suit by an alleged indorsee on notes payable to order and bearing the signature of the payee on the back thereof. The defense denies the plaintiff's title to the notes, and sets up valid defenses against the payee. The first question to be decided is what under the law constitutes "negotiation." In order for the plaintiff to recover it must be shown that she is the owner of the notes sued on, which ownership can be acquired only by a valid negotiation of such notes. Our statute is explicit in defining what constitutes negotiation of such notes. The Code, § 14-401, declares: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed bydelivery." (Italics ours.) The notes here involved, being payable to order, are negotiated by "the indorsement of the holder, completed by delivery." There is no dispute that A. J. Evans, the payee, signed his name on the back of each of the notes; but the legal question presented is whether this within itself was sufficient to pass title. The language of the statute expressly declares that in addition to such indorsement there must be a delivery; and it is apparent that there is no negotiation until the indorsement is followed by delivery, as the statute in defining what constitutes negotiation asserts that after the indorsement the negotiation is completed by delivery. An indorsement never constitutes negotiation, and an attempt to negotiate a note payable to order by the indorsement of the holder is incomplete, and, if stopped here, there is no negotiation and title remains in the holder. Daniel v. Royce,96 Ga. 566 (23 S.E. 493); Reese v. Fidelity Mutual LifeAssociation, 111 Ga. 482 (2) (36 S.E. 637); Underwood v.Craven, 142 Ga. 658 (83 S.E. 520); Dement v. Rogers, *Page 408 144 Ga. 760 (87 S.E. 1027); Hewett v. Bluthenthal BickartInc., 146 Ga. 634 (92 S.E. 56); Bell v. Whitestone,18 Ga. App. 536 (89 S.E. 1050); Baggs-Langford Motor Co. v.Moore, 36 Ga. App. 788 (3) (138 S.E. 256); State v.Industrial Acceptance Corporation, 37 Ga. App. 253
(139 S.E. 577); Willoughby v. Newman, 46 Ga. App. 377
(167 S.E. 783); Staples v. Heaton, 55 Ga. App. 495 (190 S.E. 420); 11 C. J. S. 97, § 660.
The evidence bearing upon the question of negotiation is as follows: Norris, witness for the plaintiff and former employee of her husband, testified: "I prepared the list of transfers. I delivered to Mr. C. L. Shepard, Mr. Evans' attorney, the twenty A. L. Luce notes of $125 each, due October 1, 1927, to May 1, 1929, inclusive. . . The twenty Luce notes had been transferred to Mrs. A. J. Evans. . . When a receiver was appointed for Mr. Evans, I did not include the Luce notes, because they had already been assigned at that time." Mr. Harris, an attorney for the plaintiff, testified: "Mr. Evans employed me to represent Mrs. Evans, and he told me of the attempt to have these notes set off, and that he had refused." A. J. Evans testified: "I transferred these Luce notes to Mrs. Evans because she held a deed to secure debt to the property. . . I did not list these Luce notes among my assets turned over to the receiver, because they belonged to Mrs. Evans. . . The Luce notes were transferred to Mrs. Evans on the date I indorsed my name on them. They were transferred in Mr. Shepard's office. All the details of these transfers were carried out by Mr. Norris and Mr. Shepard in the latter's office. I don't know the date Mrs. Evans knew of the transfers, but I told her about it, and told her the rent notes would protect her. Mrs. Evans never had these notes in her possession, but Mr. Shepard had them, and her records were kept separate. Mrs. Evans was not present when I transferred the Luce notes to her. Mr. Shepard negotiated Mrs. Evans' loan with Brown Brothers. I requested him to do it. Mrs. Evans borrowed some money from Brown Brothers, putting up as collateral some oil-mill stock and other property and these Luce notes with the security deed, is my recollection." The plaintiff introduced in evidence the note for $10,000, payable to Watt P. and Marvin T. Brown, representing the loan referred to by Evans, which recited that the collateral deposited with the payees was as follows: "Note A. J. Evans to Max L. James, dated Oct. 22d 1921 *Page 409 
due Oct. 22d 1921, for $7,000 principal, and transferred by Max L. James to Willie Belle Evans, together with deed to secure debt, securing payment of the same, bearing same date and recorded clerk's office Houston superior court in book 29, page 210, on Oct. 24, 1921, said deed to secure debt being duly transferred to Willie Belle Evans; and same conveying property on east side of Macon Street, Fort Valley, Georgia."
A careful examination of the foregoing evidence will disclose a total absence of any proof of delivery to Mrs. Evans. The reference by Evans to the Brown loan, wherein he testified that according to his recollection Mrs. Evans gave these notes as collateral to that loan, is completely answered and refuted by the written evidence of that loan, which recites the collateral and makes no mention of these notes as a part of that collateral. No fair inference of delivery can be drawn from his testimony that Mr. Shepard had the notes, and that "her records were kept separate." On the other hand, he testified positively that "Mrs. Evans never had these notes in her possession." It can not be said that this evidence shows a delivery of the notes to C. L. Shepard as agent or attorney for Mrs. Evans, because the only testimony indicating whose attorney Mr. Shepard was at the time of delivery to him is that of Norris, who said, "I delivered to Mr. C. L. Shepard, Mr. Evans' attorney, the twenty A. L. Luce notes of $125 each." From all this evidence the only inference justified is that after indorsing the notes the payee, A. J. Evans, delivered them to his attorney, C. L. Shepard, in which event Shepard's possession was the possession of A. J. Evans. There is nowhere in the record a word of evidence that Mrs. Evans accepted the notes or consented that they be transferred to her, nor is there any evidence that she designated an agent and authorized delivery of the notes to such agent. Mr. Evans testified that she was not present when he indorsed the notes, and that she knew nothing about it until he informed her some time later. There is nothing to indicate that she consented to accept them when informed of the transfer by her husband. So far as this record shows, A. J. Evans at all times subsequent to entering his indorsement retained possession and control of the notes. The importance of the provisions of the statute requiring delivery to complete negotiation is vividly demonstrated by the facts in this case. Relying upon the continued ownership by A. J. Evans of these *Page 410 
claims against it, the corporation, which had assumed liability for their payment, had purchased notes against Evans in approximately the same amount, feeling thus assured of the payment of such notes. No secret transfer from the husband to his wife should enable him to avoid payment of his own obligations and at the same time collect from his obligee, unless such transfer meets every essential requirement of the law applicable. The voice of Mrs. Evans is not heard throughout the transactions, and no independent act of hers in connection therewith is shown by this record. It must be held that the evidence demanded the verdict in favor of the defendants, because the evidence not only fails to show delivery, but, on the contrary, positively shows no delivery. The presumptions in favor of a holder and against an indorser who has parted with possession, provided in the Code, § 14-216, do not support the position of plaintiff in this case, for the reason that she is not shown to be the holder, nor has the indorser parted with possession. The rule stated in Paris
v. Moe, 60 Ga. 90, that production of the note at the trial is prima facie evidence that the plaintiff acquired it bona fide and for value, can not be applied here. While the notes sued on were produced on the trial, yet A. J. Evans, the payee and alleged indorser, as administrator of the estate of Mrs. Evans, was by order of court made party plaintiff, and his production of the notes on the trial is just as consistent with his continued possession as it is with his possession as her representative. No evidence was produced to show that the notes were found in her effects after her death, and no attempt was made to explain or answer the positive testimony of Mr. Evans that she had never had possession of these notes. "The production of the notes upon the trial will in ordinary cases raise the presumption that the state of facts which authorized the plaintiff to prosecute the suit in his name existed at the time the suit was commenced; yet the defendant may rebut this presumption and defeat the action by showing conclusively that the state of facts existing at the time the suit was instituted did not authorize the plaintiff to sue." 11 C. J. S. 92, § 659.
3. Since the verdict in favor of the defendants was demanded, no ruling will be made upon the special grounds of the motion for new trial, which attack portions of the charge, the admissibility of evidence not related to the issue on which the verdict was demanded, and the sufficiency of the evidence.
Judgment affirmed. All the Justices concur. *Page 411