## HIERS *et al* v. EXUM *et al.*

1. It is not necessary that title be replaced in the grantor in order to bring property which has been conveyed as security for debt to sale where the grantee has been given the power to sell the land at public outcry upon default in payment of the debt, where the warranty deed securing the debt contains no defeasance clause and no bond to reconvey has been executed. Nor need the grantee in such a deed with power of sale take possession in order to effect a valid sale, nor is he required to notify the grantor of his intention to sell.

2. Subrogation may be either conventional, resting upon agreement, or legal. In the present case there is no right of subrogation either conventional or at law. There is no right of subrogation at law, because the legal right of subrogation arising out of the payment of the debt of another extends only in favor of a surety for the payment of the debt or in favor of one who is compelled to pay the debt to protect his own right or interest, and at the time of the payment of the debt by Mrs. Hiers she had no claim against or lien upon the property in question, nor any interest based upon an indebtedness against the subsequent grantor in the deed executed to her. Under the evidence in this case there is no right of equitable conventional subrogation, because there is no interdependence or connection between the note which Mrs. Hiers paid to the bank and the deed with power of sale taken by Long merely as a contract of indemnity against loss as surety upon the note of Hiers. Upon the payment of the note this contract by its express terms had performed its only office and was functus.

3. The court properly allowed the intervention. A court of equity, having jurisdiction of the subject-matter and all of the parties interested therein, should properly adjudicate in the one action the rights of all parties at interest.

4. For the same reason the administratrix of the grantee in the deed upon which Mrs. Hiers based her claim of subrogation (whether the claim of that right was valid or invalid) should properly have been made a party, inasmuch as the deed had been entered cancelled by this administratrix. The fact that the order making her a party in the present case was not attended with the usual preliminary formalities provided by law was harmless, since it appears that the administratrix had actual notice of the pendency of the litigation.

5. The court did not err in appointing a receiver. As a general rule an *allegation* of insolvency is a necessary prerequisite to an order ousting a debtor from premises of which he is in possession; but such allegation is not essential in a case in which the court is fully authorized to find that the debtor in possession is in fact insolvent and is arbitrarily remaining upon land which has been purchased by another at a legal sale under power conferred by the deed of the party in possession himself, when it appears that he is neither attempting to cultivate the land nor caring for the buildings and other improvements, which are greatly diminishing in value by reason of neglect and decay.

6. It was not essential to the validity of a conveyance executed by the grantee of a security deed with power of sale that the advertisement of

the sale contain an explicit statement that the debt which the deed with power of sale was given to secure had matured and was past due, where there was a reference to the public records from an inspection of which any probable purchaser would have ascertained the fact that the indebtedness was in fact past due. The precise reference to the particular place in a public record where full information as to a fact of importance can be found is the equivalent of the statement of such facts as can be accurately ascertained and authoritatively established by such record.

Nos. 3877, 3878. April 17, 1924.

Receivership, etc. Before Judge W. E. Thomas. Brooks superior court. June 30, 1923.

As appears from the record, in 1919 J. R. Hiers wished to purchase a tract of land in Brooks County, containing 282 acres, more or less, and being parts of land lots 408 and 421 in the 12th district of that county. He engaged the services of W. H. Long as an attorney, and the latter obtained from the Federal Land Bank of Columbia a loan of $2500, which was secured by a first security deed to the premises. Apparently Hiers needed more money to complete the purchase; for about the same time he borrowed $832 from the First National Bank of Quitman upon a promissory note which was indorsed by his attorney, W. H. Long, and which was later renewed for the sum of $800. To indemnify Long against loss by reason of his suretyship upon the note given by Hiers to the First National Bank of Quitman, Hiers executed and delivered to Long a security deed of even date with the note to the bank. However, the bank was not a grantee in the deed; its debt was not secured by deed, nor was there any reference to the bank directly or indirectly in the deed. The consideration and object of the latter instrument was expressly stated to be for the purpose of saving Long harmless upon his indorsement of the note of J. R. Hiers. Upon the same day that the deed to the Federal Land Bank of Columbia and the indemnifying security deed to Long were executed, Hiers also executed a security deed with power of sale to Long for the purpose of securing an indebtedness of $300. All of these deeds were timely recorded in the office of the clerk of the superior court of Brooks County. The two deeds that were made by Hiers to Long contained the provision that "in case of failure to pay said indebtedness at the maturity thereof, said W. H. Long, his agent, attorney, heirs and assigns, are hereby irrevocably authorized and empowered to seize and take possession of said

property, and to sell the same for cash at public outcry in front of the court-house in said county, after having first advertised said property at said court-house for ten days by written or printed notice, and apply the proceeds of said sale to the payment of said indebtedness, and all costs of said sale, including ten per cent. additional for further attorney's fees, and the balance if any, to be subject to my order. And the payees of said note, their agent, attorneys, heirs and assigns are fully authorized to bid at said sale and to make a fee-simple title to said property to the purchaser or purchasers." On September 22, 1920, the note which Hiers had given to the First National Bank of Quitman and which was secured by the indorsement of W. H. Long was paid, though surrender of the-deed was not requested by Hiers, and it remained in the possession of Long. In March, 1920, Long died, and his widow, Mrs. Agnes C. Long, was appointed and qualified as administratrix of his estate. On April 12, 1923, Mrs. Long, as administratrix, advertised a notice that on April 24, 1923, there would be a sale in front of the court-house door in Brooks County, within the legal hours of sale, and to the highest bidder for cash at public outcry, of the 282 acres of land which Hiers had deeded to her husband, the intestate. In the notice of sale the land was fully described as set forth in the deed, and was advertised to be sold subject to the indebtedness of $2500 represented by the security deed held by the Federal Land Bank of Columbia. The notice or advertisement contained the statement that the described land was to be sold under and by virtue of the authority contained "in that certain note and conveyance executed by John R. Hiers to W. H. Long on the 6th day of June, 1919, to secure an indebtedness of $300, with interest from date at eight per cent., said paper being recorded in Book 34, page 387, in the office of the clerk of the superior court of said county. A fee-simple title will be made to the purchaser of the property, subject to the security deed held by the Federal Land Bank of Columbia, S. C., as stated above."

On April 24, 1923, the sale was had at the time and place as advertised, and after prolonged bidding the land was knocked off to Mrs. Mary Exum for the sum of $900 and subject to the $2500 note. J. R. Hiers was present at the sale and made no

objection thereto, but after the sale he endeavored to have transferred or assigned to his wife the deed which he had executed to W. H. Long to indemnify him against loss as surety for the loan of $832 which Hiers had borrowed from the First National Bank of Quitman. Though he had not objected to the sale, J. R. Hiers went from the sale to the office of attorney Samuel T. Harrell, and received and accepted from Mrs. Agnes C. Long, as administratrix of the estate of W. H. Long, a check for $299.83 as the balance of the purchase-price of the land after deducting from the $900 paid by the purchaser, Mrs. Exum, the balance due upon the $300 note, the taxes upon the land for two years, and an installment of $163 which was due upon the loan made by the Federal Land Bank of Columbia. The deed with power of sale provided that any balance remaining after payment of the indebtedness of $300 and interest was payable to the order of Hiers, and by his direction Mrs. Long's check for the $299.83 was made payable to Mrs. Neely Lane Hiers, his wife. According to evidence introduced before the judge of the superior court upon the hearing, Hiers agreed to give possession of the land to the purchaser, Mrs. Exum, in a few days, but later he refused to do this, and declared that he would leave only when ejected by the sheriff. Thereupon Mrs. Exum filed an equitable petition setting up her purchase at the sale in pursuance of the power contained in the deed of June 6, 1919, from J. R. Hiers to W. H. Long, and her title to the 282 acres of land as described in her deed from Mrs. Agnes C. Long, as administratrix of the estate of W. H. Long; and alleged, that J. R. Hiers refused, on demand, to surrender possession or to allow her to enter into possession of the land purchased, or to pay petitioner the rents and profits; that he is absolutely insolvent, is not holding possession of the described premises in good faith, but arbitrarily and contrary to the rights of the petitioner; and that she will suffer irreparable injury and damage unless a court of equity takes cognizance of the petition and grants equitable relief, since she is deprived of the use and enjoyment of the premises while Hiers is allowing the land and improvements thereon to depreciate in value and is allowing fences to fall down and buildings to go unprotected. She therefore prayed: (1) that defendant be enjoined from interfering in any manner with the petitioner in the use and enjoy-

ment of the property until the further order of the court; (2) that a temporary receiver be appointed to take possession of the land and buildings thereon, and the defendant be required by an order of the court to vacate said premises immediately; (3) for such other and further equitable relief as the exigencies of the case may require. Upon this petition Judge W. E. Thomas, of the Southern Circuit, on June 1, 1923, granted a rule nisi ordering that J. R. Hiers be served with a copy of the petition and show cause why the relief prayed for and the appointment of a receiver should not be granted.

The defendant filed an answer setting up that the deed from Long's administratrix to Mrs. Exum was void and conveyed no title, and alleging that the note for $832, to which reference has already been made, had been paid and was held by his wife, by reason of which she and not Mrs. Exum was entitled to possession of the land. On June 23, 1923, Mrs. Neely Tolar Hiers, wife of J. R. Hiers, presented a petition for intervention to the judge, which was granted. The intervention contained a prayer that Mrs. Agnes C. Long, as administratrix of the estate of W. H. Long, be made a party to the suit; and on June 23, the intervention of Mrs. Hiers was allowed and ordered filed, and a rule nisi was directed to Mrs. Long as administratrix, requiring her to show cause why she should not be made a party. On June 30, 1923, Mrs. Long as administratrix filed written objections to being made a party, setting up the reasons why she was not a proper party and why, as insisted, her being made a party would cause the action to be multifarious; but these objections were overruled, and, after making Mrs. Long a party, the court proceeded to hear evidence, and at the close thereof granted the following order: "1. That C. E. Clanton, sheriff of Brooks County, Georgia, be and he is hereby appointed receiver, without bond, to take charge of the land and property described in the petition of the plaintiff, and that he hold and use the same under the order of this court as advantageously as possible. 2. That the defendant herein, J. Robert Hiers, or the intervenor, Mrs. Neely Lane Hiers, is granted the privilege of giving a bond payable to the plaintiff, Mary Exum, with good security, to answer for any and all damage and rent that the jury on the trial of the issues herein made may determine as against the said J. Robert Hiers, defendant, or Mrs. Neely

Lane Hiers, intervenor, and upon the giving of said bond the appointment of the said C. E. Clanton, sheriff as aforesaid, as receiver, shall be vacated and no receiver appointed. 3. That the legal title to the property described in the plaintiff's petition be and the same is hereby declared to be in the plaintiff, Mary Exum, subject to the said prior liens against same; and it is decreed as a matter of law that the sale to the plaintiff, Mary Exum, was a good and valid sale and passed the title to her, subject only to the prior encumbrances against same. It is further ordered that should the said J. Robert Hiers fail to give bond herein provided for, to be approved by the clerk of the superior court, within ten days from the date of this order, then it is ordered that the said C. E. Clanton, as receiver, take immediate charge and possession of said property to the exclusion of the defendant, J. Robert Hiers, herein, and of the intervenor, Mrs. Neely Lane Hiers, and that said dwellings and buildings be vacated by the said J. Robert Hiers and his family, in order that said property might be rented, or otherwise farmed out, by the receiver to the best advantage."

The defendants excepted, alleging that the court erred, because: (1) Under the evidence and the law applicable thereto, the grant of said order appointing a receiver and requiring the defendants to vacate said dwelling and said buildings on said property is a mandatory injunction, and cannot be legally allowed and granted when the defendants are residents of the State and are in good faith claiming possession of said property and are asserting their rights thereto; and that said order is illegal and deprives the defendants of their property and the possession thereof prior to and without the trial of the facts by a jury. (2) Under the facts as they appeared at the trial of the case, at the time of the sale at which the plaintiff is alleged to have purchased said land, said sale being under a power of sale contained in a security deed in favor of W. H. Long, there was a valid outstanding deed to secure debt executed by J. Robert Hiers to the Federal Land Bank of Columbia; that the indebtedness secured by said deed to secure debt had not been paid, and under said deed to secure debt the title to said land was vested in the Federal Land Bank of Columbia, and the sale at which the plaintiff, Mary Exum, claims that she purchased said land, was void and did not pass any title to her. (3)

The sale at public outcry of the land described in the plaintiff's petition under the security deed made by J. Robert Hiers to W. H. Long, being in effect and in results equivalent to a judicial sale of said property, could not be made until the Federal Land Bank of Columbia had been paid the outstanding indebtedness and the title held by said bank reconveyed to J. Robert Hiers, it being the spirit and the letter of the law that an equity in land in one person where the title is in another cannot be seized and sold, but that the title must be made to revest in the person against whom said proceedings for the sale of the property is to be had. (4) Under the evidence in said case, at the time of said sale there was outstanding and of record in the office of the clerk of the superior court of Brooks County a security deed conveying title to said property to W. H. Long, to secure the payment of an indebtedness of $832; said security deed was of prior dignity to the deed to W. H. Long, under which the property was sold to Mary Exum. Mrs. Neely Tolar Hiers had, by payment of the indebtedness secured by the prior security deed and by her agreement with J. Robert Hiers, been subrogated to the rights of W. H. Long, under and by virtue of said deed to secure the payment of $832, and Mary Exum, in the purchase of the land at public outcry, could not acquire title, and the sale was void because of the fact that there was outstanding at said time title in Neely Tolar Hiers, and, as long as the title is outstanding in Neely Tolar Hiers, Mary Exum is not entitled to the possession of the land and is not vested with title, and under said deed to secure debt, the indebtedness thereby secured being past due, Neely Tolar Hiers is entitled to the possession of the land in controversy until said indebtedness is paid; and the effect of the decision rendered is to oust Neely Tolar Hiers from the possession of said land, and it is therefore contrary to law. (5) The sale of the land at public outcry, on April 24, 1923, by Agnes C. Long, administratrix of the estate of W. H. Long, under and by virtue of the power of sale contained in the security deed made by John R. Hiers to W. H. Long to secure the payment of $300, was void, and the deed made thereunder conveyed no title, because the advertisement which was posted at the court-house door in said county, a copy of which is attached to the plaintiff's petition, failed to recite the jurisdictional fact prerequisite to the exercise of the power of sale, to wit, that John R. Hiers had failed to pay said in-

debtedness at the maturity thereof. (6) The judgment of the court was contrary to law and to the principles of justice and equity, and without evidence to support it.

Mrs. Exum by cross-bill excepted to the ruling of the court in allowing the intervention of Mrs. Neely Tolar Hiers, upon the grounds: (1) that Mrs. Hiers had a complete remedy at law, and there was no equity in her intervention. (2) That the right of action of Mrs. Hiers, if any, was against Mrs. Long as administratrix, and not against Mrs. Exum. (3) That Mrs. Exum is an innocent purchaser of the land at public sale, and there is no allegation that she is guilty of any legal or moral fraud in the purchase. (4) That the intervention was multifarious. (5) That there is no authority of law for Mrs. Hiers to assert her right by intervention, but such right, if any, must be asserted by a separate and independent suit. Mrs. Long, administratrix, also filed a cross-bill of exceptions, complaining: (1) That the judgment making her a party was error, in that she was not a necessary party in the litigation, and the court was without authority to make her a party. (2) That whatever right of action the intervenor might have would have to be set up in an independent suit brought against respondent. (3) That respondent was never served with any copy of the intervention, being by the order of the court asked to show cause why she should not be made a party, when she is not confronted with knowledge of any ground or intention of the alleged intervenor. (4) That the intervention was allowed without any notice or knowledge being given to the respondent or any opportunity to make objection thereto. The cross-bill of Mrs. Long also seeks to raise the point that Mrs. Hiers, as intervenor, is not entitled to be subrogated to the right of the respondent administratrix and has no interest therein, because the $832 paper expressly recites that it was given to secure W. H. Long on account of his having indorsed a note of J. R. Hiers at the First National Bank of Quitman for a like amount, and that the $832 security deed was given to hold him harmless on account of said indorsement; that the $300 security deed was given for indebtedness owing by J. R. Hiers to W. H. Long; that upon investigation the respondent, as administratrix, ascertained that the note given by Hiers and indorsed by her husband to the First National Bank of Quitman had been paid; and having served its purpose, she advertised the land

under the power of sale contained in the deed given to secure the decedent in the payment of $300 to him by Hiers. It is further insisted that the court erred in the order granted making Mrs. Long a party, because Mrs. Hiers is estopped to contend that she be subrogated as to the $832, because with full knowledge of all the facts she had accepted the sum of $299.83 as the balance of the purchase-price of the land bought by Mary Exum.

*Branch & Snow,* for Heirs et al.

*Stanley S. Bennet* and *Sam. T. Harrell,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) There are three questions raised by the present record, which are determinative of all the issues involved.

1. It is insisted that the deed of Agnes C. Long, as administratrix of the estate of W. H. Long, to Mary Exum is void for the reason that a legal sale could not be had unless first the deed of the Federal Land Bank of Columbia, S. C., had been paid and that bank had reinvested J. R. Hiers with title which might thereupon be levied and sold in satisfaction of other subsequent liens. This court has frequently held this contention to be without merit. Under the ruling of this court in *Greenfield* v. *Stout,* 122 *Ga.* 303 (50 S. E. 111), among other authorities which may be cited, the collection of a debt evidenced by the deed with power of sale may be enforced by a sale of the equity remaining in the grantor of the security deed. A sale whereby the purchaser buys subject to the rights of the holder of a security deed, who for his own protection is invested with the title, does not in any way militate against or affect the rights of such holder of a security deed. This is especially true where, as in the present case, it is admitted that the holder of the security deed, the Federal Land Bank of Columbia, S. C., had given no bond for title to Hiers, the borrower. In the *Greenfield* case, this court ruled: "Where a warranty deed to secure a debt contains no defeasance clause, and no bond to reconvey is executed contemporaneously therewith, the grantee being given the power to sell the land at public outcry upon default in the payment of the debt, it is not necessary that title be again placed in the grantor in order to bring the property to sale." In the case of *King* v. *Walker,* 141 *Ga.* 63 (80 S. E. 312), a paper the same in verbiage as the deed with power of sale from Hiers to Long was before the court; and it was held that under the power of sale the grantee need not take posses-

sion to effect a valid sale, and that the grantee need not notify the grantor of his intention to sell. In *Alexander* v. *Chipstead,* 152 *Ga.* 851 (111 S. E. 552), the rulings announced in the *Greenfield* case were reaffirmed, though the express point before the court concerned only the invalidity of a sale where the grantor had died and the property was advertised and sold as the property of the grantor, when under the ruling in the *Greenfield* case it should have been sold as the property of the estate, as to which the court followed the ruling in the *Greenfield* case and distinguished the ruling in *Sorrell* v. *British American Mortgage Co.,* 148 *Ga.* 513 (97 S. E. 441).

2. One of the main contentions of the plaintiffs in error is that Mrs. Hiers is entitled to be subrogated to the rights of W. H. Long, by reason of the fact that the note for $832 which J. R. Hiers owed to the First National Bank of Quitman, and which was indorsed by W. H. Long, was paid by Mrs. Hiers or from her individual funds. We cannot sustain this contention. Hiers executed to Long a security deed with power of sale, subject to the prior security deed to the Federal Land Bank of Columbia, but the conveyance was for the sole purpose of holding Long harmless against loss by reason of his indorsement of the note. The instrument did not bespeak any indebtedness to Long on the part of Hiers. It was not given to secure a loan by Long to Hiers. The lender, the First National Bank of Quitman, is not interested in this deed, is not secured by it, and is not in any sense a party to it. Upon payment of the note Mrs. Hiers was entitled to be subrogated to whatever rights the First National Bank of Quitman had, but she was not entitled to any right depending upon the status of Long or the deed to him. Subrogation may be either conventional or legal, the definition of each and the distinction being pointed out in *Wilkins* v. *Gibson,* 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204). A conventional subrogation arises from agreement or contract; and before Mrs. Hiers could be subrogated to any right of Long, it would have been necessary for Long to assign the security deed to her. This was never done; and in fact Mrs. Long, as administratrix, very naturally refused to assign her rights as representative of Long's estate, in view of the fact that by so assigning this contract of indemnity she would have diminished the value of her third deed securing the $300 note mentioned in the state-

ment of facts. There can be no subrogation in this case, not only for the reason that the agreement to subrogate does not refer to the deed given to Long to secure him against loss upon the $832 note, but also for the all-sufficient reason that the payment of the note only subrogated Mrs. Hiers to the precise rights of the holder of the note; and as the First National Bank of Quitman had no power over, interest in, or concern with the individual transaction by which Long acquired a deed in the nature of a contract of indemnity, she acquired no interest therein by the mere payment of the note.

The provisions of the Civil Code of 1910 are not applicable to the facts of this case. Section 3552 provides that "Payment by a surety or indorser of a debt past due entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of his principal." Section 3558 allows "Any surety on the original contract, or on stay of execution, or on appeal, or in any other way, or the representative of a deceased surety, who shall have paid off or discharged the judgment or execution in whole or in part, and shall have the fact of such payment by him entered on such execution by the plaintiff or his attorney or the collecting officer, . . [to] have the control of such execution and the judgment upon which it is founded, to the same extent as if he were the original plaintiff therein, and be subrogated to all the rights of such plaintiff, for the purpose of reimbursing himself from his principal." Section 3567 provides that "A surety who has paid the debt of his principal is subrogated, both at law and in equity, to all the rights of the creditor, and, in a controversy with other creditors, ranks in dignity the same as the creditor whose claim he paid." It is plain that the facts of this case do not place Mrs. Hiers within any of these instances of subrogation expressly declared in the Code, nor does her case fall within the provision of section 3568, for Mrs. Hiers was not a surety for her husband, and this section has reference only to a surety. It says: "He is entitled, also, to be substituted in place of the creditor as to all securities held by him for the payment of the debt." The doctrine of subrogation is also expressly recognized in sections 6038 and 6076; but as the former section refers to those who have a judgment and take up prior liens to protect the value of their judgment, and the

latter to purchasers at void or irregular judicial sales under mort-
gage foreclosures, it is evident that there is no application in the
present case. The nature of the debt with power of sale which Hiers
executed to Long for the sole purpose of indemnifying the latter
against loss by reason of his indorsement and securityship upon
the $832 note given by Hiers to the First National Bank of Quit-
man is such that, being a mere contract of indemnity, upon pay-
ment of the note it had performed its function, became functus
officio, and was avoided. The express terms of the instrument were
such that there could not be a legal subrogation; and if a conven-
tional subrogation were sought to be relied upon, it would have
to appear that W. H. Long in his lifetime, or his representative
after his death, assented to the agreement. Conventional subro-
gation may rest upon an agreement either with the debtor or the
creditor by which the person discharging the obligation of another
shall be subrogated to the rights of the creditor, and for this rea-
son, under the facts alleged, Mrs. Hiers was perhaps subrogated
to all of the rights of the First National Bank of Quitman. But its
only right was to collect the note. It had no deed to any property
to secure the debt; and even if by payment of the note Mrs. Hiers
became entitled to proceed against Long as surety upon the note,
her right would not extend any further and would not include a
right to be subrogated to independent contracts by which he sought
for his personal protection to indemnify himself.

The case might be different had Mrs. Hiers, at the time she paid
the $832, been the holder of a security deed or other lien of any
kind upon the 282 acres of land upon which she seeks to be subro-
gated to the rights of Long under the security deed to him in the
amount of $832. But at the time Mrs. Hiers made the payment to
the bank on September 22, 1920, she had no claim against the
land, and it was not until October 12, 1922, nearly two years after
the payment of the note, that Hiers executed to her a deed securing
an alleged indebtedness of $4843. "The doctrine of subrogation is
not applied for the mere stranger or volunteer, who has paid the
debt of another, without any assignment or agreement for subroga-
tion, being under no legal obligation to make the payment, and not
being compelled to do so for the preservation of any rights or prop-
erty of his own." Sheldon, Sub. § 240. The doctrine of subroga-
tion was borrowed from the civil law, and "Under the civil law it

was said that the right would not pass to a stranger; that it was a personal privilege. In order to pass the right to him, it would be necessary to do so by stipulation for such agreement." Harris, Law of Sub. § 792. As we have already said, the agreement for subrogation may be made either with the debtor or the creditor; but before any right of subrogation can exist there must be, in order to create a conventional subrogation, an agreement with one or the other, and it must concern the debtor or the creditor in a particular indebtedness. In the present case as related to the deed given to secure the $832 debt, Long was not in any sense a creditor. His contract was in effect really a contract of indemnity, which was discharged by the payment of the note to the First National Bank of Quitman; and therefore the agreement alleged did not include this kind of a contract or permit it to be affected by the doctrine of subrogation. There is no right of subrogation at law in this case, because the right of subrogation springs out of the fact of the payment of a debt, and, under our Code, extends only in favor of a surety for the payment of a debt or in favor of one who is compelled to pay the debt to protect his own rights or interests. There can be no equitable conventional subrogation, because there is no interdependence or connection between the note which Mrs. Hiers paid to the bank and the deed with power of sale taken by Long, such as to subrogate it to the agreement between Mrs. Hiers and her husband, for the reason that so far as appears from the deed Long was not a creditor. A creditor is one to whom another is already indebted. On the contrary, the deed from Hiers to Long shows that it was expressly taken for the purpose of preventing, if possible, Hiers from becoming a debtor to Long in the sum of $832. In Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 549 (8 Sup. Ct. 625, 31 L. ed. 537), Mr. Justice Miller, delivering the opinion of the court, says that perhaps as clear a statement of the doctrine on this subject as is to be found anywhere is the ruling of Chancellor Johnson in Gadsden v. Brown, Speer's Eq. (So. Car.) 37, 41, that "The doctrine of subrogation is a pure unmixed equity, having its foundation in the principles of natural justice, and from its very nature never could have been intended for the relief of those who were in any condition in which they were at liberty to elect whether they would or would not be bound; and, as far as I have been able to learn its history, it never has

been so applied. If one with the perfect knowledge of the facts will part with his money, . . any rule of law which would restore him his money . . would subvert the rules of social order. It has been directed in its application exclusively to the relief of those that were already bound who could not but choose to abide the penalty." In delivering the opinion of the court in Ætna Life Ins. Co. *v.* Middleport, supra, Mr. Justice Miller held that "The doctrine of subrogation in equity requires, 1, that the person seeking its benefits must have paid a debt due to a third party before he can be substituted to that party's rights; and, 2, that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another." As already stated, it appears from the record that at the time Mrs. Hiers paid the note to the First National Bank of Quitman she held no lien upon the land and had no interest to protect. As held by this court in *Wilkins* v. *Gibson,* supra, "subrogation will arise only in those cases where the party claiming it advanced the money to pay a debt which, in the event of default by the debtor, he would be bound to pay, or where he had some interest to protect, or where he advanced the money under an agreement, express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor." See also *Lutes* v. *Warren,* 146 *Ga.* 641 (92 S. E. 58). Under this rule, even if Mrs. Hiers was subrogated to all the rights of the bank, her rights could not be extended to those accruing to Long under his contract of indemnity.

3. The assignments of error in the cross-bill of exceptions present for consideration the allowance of the intervention of Mrs. Neely Tolar (or Lane) Hiers, and the order making Mrs. Long, as administratrix of W. H. Long, deceased, a party to the cause. We think the court properly allowed the intervention of Mrs. Hiers. The 282 acres of land was a common subject-matter in the hands of the court, to an interest in which all the parties, including Mrs. Hiers, asserted an interest, legal or equitable. It was proper that the court of equity, having jurisdiction of the subject-

matter and of all the parties, should adjudicate the rights of all parties interested, in order to avoid a multiplicity of suits.

4. For the same reason it was also proper that Mrs. Long, as administratrix of W. H. Long, should be made a party and be heard, since the title of Mrs. Exum was derived from her as the legal representative of the grantee of the deed with power of sale under which Mrs. Exum derived her title, and also in view of the fact that the deed from Hiers to Long to indemnify the latter was not formally cancelled until the day after the public sale; even though under facts developed at the hearing the defendants might be estopped to assert any rights dependent upon the failure to cancel, by reason of their knowledge that for several months the note which was the basis of. the contract of indemnity had been paid and discharged.

5. The court did not err in the appointment of a receiver. Despite the testimony in behalf of the defendants, the court was fully authorized to find that J. R. Hiers was insolvent, and that he was arbitrarily remaining upon the land, which he was not attempting to cultivate, and that the buildings and other improvements upon the place were greatly diminishing in value for lack of care and repairs. The facts in this case are stronger than those presented in *Vizard* v. *Moody,* 117 *Ga.* 67 (43 S. E. 426), and *Gillespie* v. *Hunt,* 145 *Ga.* 490 (89 S. E. 519), in both of which cases it was held that the appointment of a receiver to take charge of the land was not error. In the *Vizard* case, this court held: "Where one who has purchased land under a deed of trust to secure a debt is wrongfully excluded therefrom by the party in possession, who is insolvent, . . a court of equity should, upon a proper showing, grant the prayers of a petition ancillary to the action of ejectment, for an injunction to restrain the defendant from collecting the rents, and for the appointment of a receiver to take charge of the property and collect and preserve the rents and hold them to abide the final judgment in the case." Were it not profitless, numerous authorities of this court to the same effect could be cited. It is strenuously insisted that the order of the judge is in fact a mandatory injunction. The contention is without merit, as it appears from the order that a receiver is appointed only to preserve the property and, if there be any proceeds or revenue therefrom, in-case the property can be

3

rented or cultivated with profit, hold the same to abide the final judgment of the court.

6. The above rulings dispose of all the material issues raised in the main and cross-bill of exceptions. It is insisted however, that the deed from Mrs. Long as administratrix of W. H. Long, deceased, to Mrs. Mary Exum is invalid, because it was not stated in the notice or advertisement of the sale that the $300 debt evidenced by the note to secure which the deed with power of sale was given had matured and was past due. In the advertisement a reference was made to the record, from which any probable purchaser would have ascertained the fact that the note for $300 was several months past due. We hold that this reference to the record of the deed sufficiently incorporated in the notice of sale the fact that the indebtedness was past due, and that the sale was authorized by the very terms of the conveyance. As a general rule, the inclusion of precise reference to the particular place in the public records where full information as to important facts can be found is a sufficient inclusion of facts that can be accurately ascertained and authoritatively established by the record referred to.

There was no error in the order of the trial judge.

*Judgment on main and cross-bills of exceptions affirmed. All the Justices concur.*

ATKINSON, J., concurs in the result.