COLONIAL HILL COMPANY *et al* v. MORTGAGE BOND AND TRUST COMPANY.

No. 8539.   JANUARY 13, 1932.   REHEARING DENIED FEBRUARY 13, 1932.

208

*Don K. Johnston* and *Etheridge, Peck & Etheridge,* for plaintiffs in error.

*Jones, Evins, Powers & Jones* and *Ralph Williams,* contra.

GILBERT, J. ■ ■ Headnotes one and two do not require elaboration.

■ .The controlling question is whether the court erred in finding that Mortgage Bond & Trust Company, the petitioner, was entitled to be subrogated to the benefits of the liens of the West Lumber Company which were paid off by the loan made by petitioner and canceled. Petitioner alleged that the loan was made for the express purpose of paying off existing liens held by West Lumber Company and W. W. Hanson; that it was expressly agreed that petitioner would succeed to these liens in consideration of lending the money with which the liens were discharged. The auditor found against subrogation as to the Hanson lien, to which finding there is no exception, and with that we are not concerned. Briefs of both parties are elaborate and thorough.

It can serve no useful purpose to discuss in detail the long list of decisions rendered by this court involving the subject of subrogation. Many of them contain elaborate opinions. Each case is founded upon its own facts, and in comparing them the dividing lines in some instances are difficult to trace. Perhaps the leading case is *Wilkins* v. *Gibson,* 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204). In that decision are cited other Georgia cases and many from other jurisdictions. The cases, especially from other jurisdictions, show considerable variations. While quotations from those cases appear in the *Wilkins* case, this court did not adopt and could not adopt all that was said by the courts of other jurisdictions. The *Wilkins* case touches upon a great variety of facts under which the question of subrogation was considered. It is a "full-bench" decision. Since its rendition many cases have been decided by this court, the judgments in which have not received

the concurrence of all the Justices, and these cases show that the Justices are not thoroughly in accord in construing all that was said in the *Wilkins* case. The *Wilkins* case cites and quotes from *Merchants Bank* v. *Tillman,* 106 *Ga.* 55 (31 S. E. 794), and then adds a statement that "It appeared in that case that the debtor made an express agreement with the person who advanced the money to pay off the incumbrance that he should have a first lien on the property. . . An agreement of the character just referred to was held in effect to be an agreement that the second creditor was to be subrogated to the rights of the creditor whose debt had been discharged with the money advanced. Viewed in the light of the authorities, as well as in that of sound equitable principles, that decision is manifestly right. *But further than that we are not prepared to go.*" [Italics ours.] This court said that the decision in that case was "manifestly right," so the precise facts are important. Not all of the facts are reported in the published volume. As shown in the recent case of *Federal Land Bank* v. *Barron,* 173 *Ga.* 242 (160 S. E. 228), the record of file in this court shows that the bank, which was the junior lienholder, expressly agreed that if a third party (Tillman) would pay off the fi. fa. (first lien) the bank would consent that said third party should have a first lien on the property to the extent of the fi. fa.

The auditor did not find in this case that Colonial Hill Company made any agreement, express or implied, that the Mortgage Bond & Trust Company should have a first lien to the extent of the West Lumber Company's liens discharged by them. Every one must concede that real danger and much harm may result unless the courts are extremely careful not to qualify written contracts of parties because of proof of agreements of the parties which may affect intervening lienholders. This is illustrated by the present case, where the lender apparently relied upon an affidavit of the borrower, which the latter must have known was, at least, misleading. The borrower must have known that the purchase-price of the land had not been paid. "The doctrine of subrogation is a pure unmixed equity, having its foundation in the principles of natural justice, and from its very nature never could have been intended for the relief of those who were in any condition in which they were at liberty to elect whether they would or would not be bound; and, as far as I have been able to learn its history, it never

has been so applied. If one with the perfect knowledge of the facts will part with his money, . . any rule of law which would restore him his money . . would subvert the rules of social order. It has been directed in its application exclusively to the relief of those that were already bound who could not but choose to abide the penalty." Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 549 (8 Sup. Ct. 625, 31 L. ed. 537); Hiers v. Exum, 158 Ga. 19, 31, 32 (122 S. E. 784). This is particularly so when, in transactions like that with which we are now dealing, parties lending money with which other liens are to be discharged have the perfectly obvious method open to them of having the liens transferred or assigned and kept alive for their benefit. Where this is not done, and where the older liens which are discharged are canceled on the records as required by law and junior liens have been recorded as required by law, the lender would seem to be guilty of negligence, and he should be left to the method of securing himself which he has deliberately chosen.

"In a case where a stranger pays off the debt of another which is secured by a deed or mortgage, the parties have a right to agree that the payer will have the same priority as the holder of the security, and be substituted for him. A court of equity will enforce this agreement as made, and give the second creditor just such security as he contracts for. If he is content to take an inferior lien and rely on that to enforce payment of his debt, the court will not, in the absence of an agreement for subrogation, come to his relief and subrogate him to the rights of the holder of the original security. Consequently, if the second creditor pays the debt without taking an assignment of the security, and without any agreement, either actual or implied, that the security is to be kept alive for his benefit, and takes a new security, it will be subject to any valid intervening liens which may have been created by the debtor on the property, notwithstanding the former might have paid the debt by request of the debtor and without any knowledge of the existence of the intervening liens. If in such a case the lender desires to be subrogated to the rights of the original creditor, he must make a distinct agreement to that effect. The law will not imply an agreement from the bare fact that the money was paid by request of the debtor. When the first security is paid off its lien is discharged, and the equitable doctrine of subroga-

tion can not be invoked to revive it in favor of a person who had no interest in paying the debt, and who did so without any agreement that he would be substituted for the original creditor. By operation of law, as soon as this lien is discharged, the lien next in dignity takes its place, and for equity to give another creditor priority over such a lienholder, when perhaps the debtor's purpose in discharging the first lien was to give him the preference, would be manifestly unjust. *In any case the burden is on the person paying off the lien to show an agreement, or a state of facts from which an agreement would be implied, to substitute him for the original creditor. And to properly carry this burden he must show an agreement clear and unequivocal, or a state of facts from which such a one will be implied. Such we understand to be the rules recognized and applied by at least a majority of the courts of this country."* [Italics ours.] *Wilkins* v. . *Gibson,* supra.

What, then, are the facts of the present case with respect to the right of Mortgage Bond & Trust Company's claim of subrogation to the lien of West Lumber Company? The facts are not in conflict, unless a conflict arises when a witness testifies positively to a fact and subsequently negatives that evidence by a qualification. The proper rule for weighing the credibility of such a witness is to construe the testimony most strongly against the party who offers the witness. In this case the Mortgage Bond & Trust Co. offered a witness, Eisenhart, who, as the agent of plaintiff, handled the matter of making the loans to Mrs. Gibson, the proceeds of which discharged the liens of West Lumber Company. Eisenhart testified: "The express agreement with Mr. and Mrs. Gibson that this was to be a first lien was a verbal agreement, made at the time the estoppel certificate was signed, and I explained that the estoppel certificate was a statement that the mortgage was a first lien on the property." He also testified that the estoppel certificate was signed on March 15, but that the making of the loans was not finally consummated until March 29. The estoppel certificate was dated March 29. On cross-examination the same witness testified: "No, I did not have any agreement, other than what was contained in the application for loan, as to whether we were to have a first lien or not. I don't know whether anybody else did or not. This agreement to have a first lien was made at the time the papers were executed, on

March 15th. The estoppel agreement is the agreement I refer to. I had no agreement beyond that; other than my general conversation with them at the time; . . that was the agreement I referred to in my direct examination. . . When these estoppel applications were signed they explained to me, of course, that my loan would constitute a first lien when these other debts were taken care of to Hanson and West Lumber Company. They assured me mine would be the first lien. . . I explained to them what the estoppel certificate was, that it was a statement that our loan was a first mortgage."

The material parts of the estoppel certificate mentioned above recite that Mrs. Gibson, "having been requested to execute this instrument in order that it may be exhibited to prospective purchasers of the notes or bonds evidencing said debt to induce a purchase of the same," does "hereby represent and certify that there are no defenses available to the undersigned [Mrs. Gibson] . . against the payment of said notes or bonds, nor any offsets or equities between the undersigned and Atlanta Trust Co., trustee, and that the instrument securing said notes or bonds is truly a first lien upon the real estate conveyed thereby." What is the effect of this evidence? Does it amount to an agreement express or implied either of the creditor or debtor that the Mortgage Bond & Trust Company should be subrogated to the rights of West Lumber Company, that is, that Mortgage Bond & Trust Co. was to occupy the status of the West Lumber Company as the holder of the first lien on the property? The estoppel certificate, which it was admitted by the witness Eisenhart was the agreement to which he referred and that there was no other agreement with respect to the matter of subrogation, was to be attached to the security deed for the purpose of aiding the bond company in selling the security to others. Properly construed, this evidence merely amounts to the expression of an opinion by the affiant to the effect "that the instrument securing said notes or bonds is truly a first lien on the real estate conveyed thereby." It can not be said that this is a statement of contract by which Mrs. Gibson either expressly or impliedly substituted the Mortgage Bond & Trust Company for the West Lumber Company with regard to the latter's liens. The estoppel agreement is in writing, and for that reason affords a more satisfactory basis for arriving at the truth

of the case than is possible where such agreements are in parol. Considering all of the evidence on the subject, it is clear that the language quoted from the estoppel certificate constitutes the sole agreement between the parties on the subject. This evidence must be construed most strongly against Mortgage Bond & Trust Company. So construed, the facts of this case are very similar to the facts of *Jackson* v. *Blackwell*, 173 *Ga.* 614 (160 S. E. 772), where subrogation was denied.

Headnotes four and five do not require elaboration.

*Judgment reversed. All the Justices concur, except Hines, J., who dissents.*