BUSSEY *v.* PORTER *et al.*

No. 11015. JULY 2, 1936.

*Grice & Grice,* for plaintiff in error.

*Beck, Goodrich & Beck, Sara C. M. Torbert, Walker & Kilbride, J. Mallory Hunt, Jones, Johnston, Russell & Sparks, Arthur Lewis, L. D. Moore, Martin, Martin & Snow,* and *Habernicht Carson,* contra.

Mabry Manufacturing Company and against the partners thereof.

The intervention of Bussey alleged that for some time before September 1, 1933, he and Mabry were partners under the name of Bussey-Mabry Manufacturing Company; that on that date the partnership was dissolved, and Mabry agreed to account to and settle with intervenor for his half undivided interest in the partnership assets, but, despite the constant efforts of intervenor to bring the same about, there has been no accounting or settlement and no division of the assets of the late copartnership; that intervenor advanced to said partnership certain amounts in cash, which went into its assets and was used in the operation of the partnership business; that among the assets of the late partnership are certain properties shown in an exhibit attached, which have been seized by the appointed receiver; that the assets so shown are not now and never have been the property of Mabry trading as Mabry Sons Manufacturing Company, but are and always have been the property of the late partnership of Bussey-Mabry Manufacturing Company; that both Zachry and Industrial Loan Company claim title to or a lien on said property by certain instruments in writing given to each of them by Alfred Mabry; that it would be illegal and inequitable to apply any part of said assets to the payment of the individual debts of Alfred Mabry until an accounting be had between intervenor and Mabry, and until as a result of said accounting it should be determined that Mabry has a claim thereto as against petitioner as a member of the said late firm. Bussey prayed for an accounting between him and Mabry, and that Zachry and Industrial Loan & Investment Company be decreed to have no claim on said property, except it be decreed to be inferior to intervenor's claim.

By consent the case was submitted to the judge to determine all issues without the intervention of a jury. Porter testified: "I had never seen Alfred Mabry until about the middle of November, 1933. He came to my office and said he wanted to borrow sixteen hundred or six hundred dollars, I don't know which; but anyway he had a patented washboard and brought it there and showed it to me. I let him have six hundred dollars. I don't think he had the patent; but he was getting a patent, and when he got it he was going to transfer it to me for the six hundred dollars. Later he came back and said there was a fellow in Griffin . . that

had a note for a thousand dollars and charged him eight per cent. royalty on every washboard he made, and if he could get that thousand dollars he would give me the note. Well, it went on for a while, and I got sick last spring, had a hemorrhage, and I forgot all about it until I saw this thing went into bankruptcy or something, whatever it did, and I turned it over to Mr. Lewis. I never did get the assignment of the note and bill of sale in Griffin, that he had promised to give me, nor did he give me the assignment of the patent right. I made him the loan of the six hundred dollars, and indorsed his note for one thousand dollars, upon his promise that he would give me that security. I am still liable for the thousand-dollar note at the bank, I am indorser on it, and have sufficient assets out of .which the bank can compel me to pay the note." (Question:) "You understood from Mr. Mabry, did you not, Mr. Porter, that he was getting this money to pay debts which were owed by him and Mr. Bussey?" (Answer:) "I don't know about Mr. Bussey, but he said he could not operate, did not have the money. So far as it came to my knowledge, it was just an individual matter between me and Mr. Mabry." Alfred Mabry's testimony was to the same effect as that of Porter.

David T. Bussey testified: "At one time I was in partnership with Alfred Mabry under the name of Bussey-Mabry Manufacturing Company. . . It was dissolved between September 1 and September 15, 1933. The list of assets attached to my intervention is property now held by the receiver, is part of the firm assets at the time we dissolved. We had dissolved partnership prior to the date of the paper exhibited to me by Mr. Lewis—a paper dated October 9, 1933, marked canceled by Mr. O. A. Park, who held it in escrow some time in November, 1933. That paper was merely as to the disposition of the assets. He was to pay for them; and when he did I was to turn them over to Mabry. It was left in escrow with Mr. Park for that purpose, because Mabry did not have the money; when he paid for my interest in the partnership assets I was to turn them over to him; and that paper was left with Mr. Park in escrow as it recites, but Mabry did not get up the money; and hence this paper was not turned over to him, but was returned to me. I left that paper there to be delivered to him in case he turned over to me the payment, eight hundred and sixty-three dollars. He didn't pay me, and the paper was surrendered to me

by Mr. Park. The transfer by him to me of a one-half interest in his patent had nothing to do with the partnership. I had three transactions with Mabry: first, the purchase of a one-half interest in his patent application; second, the dissolution, and third, subsequently, his effort to buy out my interest in the partnership assets. I paid him the five hundred dollars I agreed to pay him for his half interest in the patent. No notice was published in the newspaper, notifying the world that the partnership was dissolved. The creditors of the partnership were not notified in writing. At the time of the dissolution we owed not very many debts. We owed the thousand dollars to Blakely. The patent did not enter into the partnership agreement at all." The paper referred to in the testimony of Bussey was an agreement of dissolution of the partnership of Bussey-Mabry Manufacturing Co., signed by both partners. It recited that Mabry had paid Bussey $863 for Bussey's interest in the firm. On it was written: "The foregoing agreement having been left with me in escrow pending the payment of the amount therein specified, and the time within which payment was to have been made having expired, the contract is canceled at the request of David T. Bussey. This Nov. 11, 1933. Orville A. Park." Bussey introduced an agreement dated March 14, 1933, between him and Mabry, whereby, in consideration of $500 to be advanced by Porter, Mabry sold to him an undivided half interest in a described pending patent for a washboard. Also, a partnership agreement between him and Mabry, dated July 21, 1933, for the manufacture of the patented washboard, setting forth the part to be taken by each partner in the conduct of the business. Mabry was to have supervision of the manufacture of the washboard, and Bussey was to be sales manager with his expenses paid, including 3-1/2 cents per mile for automobile expenses.

Blakely did not testify, but in his intervention he took the position that he had been paid his $1000, but never transferred the paper to any one, and had no further interest in the matter.

The court entered the following decree: "That Bussey-Mabry Mfg. Co. was a partnership composed of Alfred Mabry and David T. Bussey, and that said partnership is insolvent; that the assets now in the hands of the receiver appointed in this case are assets of the said partnership; that the patent right to a certain washboard under application for patent filed September 23, 1933, . .

constitutes a portion of the assets of said partnership. That the oldest lien on the partnership assets is the bill of sale, securing a $1000 note, signed by Bussey-Mabry Mfg. Co., by each of the partners individually. . . That in equity Jas. H. Porter is the purchaser and owner of said note; and that Jas. H. Porter do have and recover of the partnership . . and of the individual members of said firm one thousand and no/100 dollars principal.
. . This judgment shall operate not only as a general lien against Bussey-Mabry Mfg. Co. and the individual members of that firm, but also as a special lien on the property described in said bill of sale from Bussey-Mabry Mfg. Co. to T. T. Blakely. . . That the Industrial Loan & Investment Company do . . recover of Alfred Mabry the sum of three hundred and fifty dollars principal.
. . This judgment shall operate not only as a general lien but also as a special lien on the property described in the aforesaid bill of sale [executed by Mabry on March 31, 1934]. . . As to any of the property in said bill of sale which may also be described in the T. T. Blakely bill of sale, the Porter special judgment shall have priority, as the Blakely lien was recorded first. . . That W. H. Zachry do have and recover of Alfred Mabry the sum of $1741.42. This judgment shall operate not only as a general lien against Alfred Mabry, but also as a special lien on the property described in the bill of sale from Alfred Mabry to W. H. Zachry; . . but as to any property in said bill of sale which may also be described in the aforesaid T. T. Blakely or in the Industrial Loan & Investment Company bills of sale, the Zachry special judgment shall be inferior, having been last recorded. That as to the intervention of David T. Bussey asking for an accounting between himself and his partner, Alfred Mabry, the evidence fails to furnish the necessary data to enable the court to reach the conclusion that either one owes the other as a result of the partnership business. There is evidence as to the amount contributed to the venture by Bussey, but no definite evidence as to the volume of business, the cost of production, the profit realized or the loss incurred. No part of the capital investment can be withdrawn by either partner until all partnership debts are paid, and the evidence shows the firm to be insolvent. The evidence fails to show any right of recovery by Alfred Mabry or by D. T. Bussey against the other."

Bussey excepted, assigning error on this decree.

RUSSELL, Chief Justice. The first assignment of error complains that the court decreed that Porter was in equity the purchaser of the Blakely paper, and was given a judgment against Bussey-Mabry Manufacturing Company and against both Mabry and Bussey, with a superior lien on the property covered by the Blakely bill of sale. In the action instituted by Zachry, in which he asked that his bill of sale be foreclosed in equity, and for a decree establishing in his favor a special lien on the property, Bussey intervened and set up that he and Mabry had been partners under the name of Bussey-Mabry Manufacturing Company, but that the partnership had been dissolved, and that there had been no accounting between him and Mabry, and no division of the partnership effects; that Mabry secured his individual debts by pledge of the partnership assets to Zachry, and also to the Industrial Loan & Investment Company, and that each of these creditors of Mabry individually was asserting a lien against this partnership property. He prayed for an accounting, and for a decree that neither Zachry nor Industrial Loan & Investment Company should assert any claim to the partnership property described in their respective bills of sale superior to Bussey's rights as a member of the partnership. The intervention of Porter set up that Bussey-Mabry Manufacturing Company owed Blakely a note of a thousand dollars secured by a bill of sale to certain personal property, practically the same as described in the bills of sale to Zachry and the Industrial Loan & Investment Company; that Mabry had proposed to Porter that if Porter would loan or secure for Mabry the money with which to pay Blakely, Mabry in paying the same to Blakely would get him to transfer and assign the bill of sale as security to Porter, and this was agreed to; that Porter indorsed a note for $1000 for Mabry (Porter being solvent and Mabry insolvent), on which Mabry obtained the $1000 and paid it to Blakely, but there was never any written transfer or assignment of the note or security. Porter prayed that the court treat the transfer and assignment as having been made, and that he have a prior lien on the property secured thereby.

It is earnestly insisted by eminent counsel for the plaintiff in error that a stranger who, at the request of one partner after the dissolution of the copartnership, indorses the individual note of a former partner and thereby enables him to procure a sum

of money which actually goes to discharge the partnership note secured by a bill of sale, the indorsement being made on the faith of the promise of the partner procuring it that he would obtain from the holder of the partnership note a transfer of the note and its security, for the purpose of securing the stranger, and deliver it to the stranger who indorsed the note, is not to be treated in equity as the purchaser of the partnership note, where no transfer was made, where his dealings were entirely with the former partner, and that the purchaser in equity of the note is not entitled to be subrogated to the rights of the holder of the partnership note, where the facts fail to show that a demand for payment on the note of indorsement has ever been made on the maker or indorser, or that the note has ever become due, or that he has ever paid it. Learned counsel also contend that "Mabry individually borrowed money, and to secure it pledged property belonging to a partnership since dissolved, but of which he was a member," and asks this question: "In the absence of any contention that the money so borrowed went for the benefit of the partnership, is the creditor of Mabry entitled to a special lien on this partnership property merely because when the partnership was dissolved the property was not removed, but remained in Mabry's care—Bussey having done no affirmative act to mislead creditors?"

In our opinion, the ruling upon these points is controlled by the decision in *Patterson* v. *Clark*, 96 *Ga.* 494 (23 S. E. 496). It is to be noted that in the Porter intervention there is no prayer for subrogation. Porter's case is based on equitable principles entirely independent of subrogation, but practically identical with those involved in the *Patterson* case. This point has been distinctly held by this court in *Colonial Hill Co.* v. *Mortgage Bond & Trust Co.*, 174 *Ga.* 204, 210 (162 S. E. 531), where Mr. Justice Gilbert said: "This is particularly so when, in transactions like that with which we are now dealing, parties lending money with which other liens are to be discharged have the perfectly obvious method open to them of having the liens transferred or assigned and kept alive for their benefit." See also *Hiers* v. *Exum*, 158 *Ga.* 19 (122 S. E. 784). The motion to review and overrule the *Patterson* case, presented by so profound a lawyer as counsel for the plaintiff in error in this case, carries with it the necessary implication that unless the ruling in the *Patterson* case is overruled,

the first exception to the decree of the chancellor is entirely without merit. In the opinion in the *Patterson* case Mr. Justice Lumpkin said: "It appeared from the evidence that J. H. Patterson had borrowed from one Hambright a sum of money for the purpose of paying off certain executions against Patterson, held by Bell Thompson, Baxter and others. Clark was security for Patterson in obtaining this loan, and there was sufficient evidence to warrant the jury in finding that there was an agreement between these parties that paying the holders of these executions with the funds thus raised should not operate to extinguish the executions, but that they should remain open against Patterson for the benefit of Clark, in order to indemnify him against loss by reason of the suretyship." The judgment was affirmed on the judge's refusal to give the following requested charge to the jury: "If J. H. Patterson borrowed money from Hambright, with Clark as security, then the money would belong to Patterson and not to Clark; and when applied to Bell Thompson fi. fas. and the Baxter and other fi. fas., it was a payment and extinguishment of the fi. fas. so far as the complainant, Mary A. Patterson, was concerned." In the opinion it was said: "Ordinarily, where a judgment debtor borrows money with which to pay off a judgment against him, and uses the money for this purpose, the judgment becomes satisfied and is no longer operative as a lien upon the debtor's property. It often happens, however, that a judgment debtor agrees with one who lends him money for such a purpose, that the judgment and execution shall not be satisfied by payment to the holder thereof, but shall be transferred to the lender as security for the loan; and there can be no doubt that such an arrangement is strictly proper and legitimate. We see no reason why a similar arrangement may not be made for the protection of one who, by becoming surety for a debtor, aids the latter in procuring money with which to pay a judgment creditor who is pressing for the collection of his money. Assuming that the jury found correctly as to the facts, this is precisely what was done in the present case. In the absence of any agreement or understanding upon the subject, it would doubtless be true that when Patterson paid his judgment creditors the amounts respectively due them, their executions would become satisfied; but if Patterson made an express contract with Clark, in order to induce him to become surety, that the executions should

not become satisfied but should be held by Clark for his protection, what good reason in law or in morals can be suggested why this contract should not, inter partes, be enforced for the benefit of the surety? None occurs to us, and none was presented in the argument for the plaintiff in error. We are therefore well satisfied that the court did not err in declining to give, without qualification, the charge requested."

So we are of the opinion that in the case at bar the agreement to which both Porter and Mabry testified (that Porter would go security for Mabry, so that he could borrow from the bank $1000 with which to pay Blakely, with the distinct understanding and agreement that when Blakely was paid the note would not be treated as paid, but that the thousand dollars would be used to effect a transfer of the note and bill of sale held by Blakely to Porter as security against loss in future) created an equity of the same nature in favor of Porter as rose in *Patterson's* case in favor of Clark. Bussey testified that the debt was one of the partnership, and that it was paid. The payment by Mabry was evidenced by a check for $1000 drawn on the bank to which the note of Mabry indorsed by Porter was given. So there can be no question that the partnership got the benefit of the transaction. The principle that when one of two innocent parties must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss, has no application in this case, because there is no complaint from either Blakely or the bank that they have sustained any loss. The evidence is sufficient to warrant the decree, for the reason that it appears that the transfer and assignment which Mabry promised he would have made to Porter was never in fact made. Upon this feature of the case the decree of the court was correct under the principle that equity considers that as done which ought to be done, and will enter nunc pro tunc on Blakely's bill of sale a transfer to Porter in conformity with Mabry's agreement. The fact that the chancellor directs the receiver to pay Porter a thousand dollars will not relieve Mabry from liability on the note; and since it is established that Mabry is insolvent, Porter will get nothing more under the decree than he would get if Mabry were solvent. If Mabry pays the note to the bank, he will have a right to recover from Porter the amount Porter received by reason of the decree. On this principle the court declines to review or overrule *Patterson* v. *Clark,* supra.

■ In view of the ruling in the preceding division, the second and third assignments of error on the decree entered by the court are without merit.

■ We do not think the judge erred in that part of the decree in which he held that the patent was partnership property. It is true that it appears in the record that the patent right (more properly denominated as an application for a patent) was at first the joint property of Bussey and Mabry, by reason of the fact that Bussey had bought an undivided half interest therein from Mabry. But there also appear in the record articles of partnership, which show that Bussey and Mabry did form a partnership; and there being nothing in the evidence to show that the partnership, under the contentions of Bussey, has ever been properly dissolved, the patent right must necessarily remain as the partnership property. The articles of partnership signed by both parties covered by mutual agreement, with meticulous precision, every detail embraced within the partnership, defining the respective duties of the parties, providing for Bussey's expenses for his transportation as general salesman of the partnership, and that Mabry was to have charge of the supervision of manufacturing washboards. In these circumstances there is no merit in the contention made in the fourth assignment of error, that it was erroneous to hold that the patent was the property of the partnership.

■ The fifth and final assignment of error is as follows: "Plaintiff in error here and now excepts as a matter of law to said final decree, and to the failure of the court to include therein a provision in respect to prayer 'd' of his intervention, which was as follows: '(d) That the said W. H. Zachry and the said Industrial Loan and Investment Company nor any other creditor be decreed to have any claim on said property except such as is decreed to be inferior to the claim and rights of your intervenor.' And he specially assigns as error the failure of the court to find, particularly in view of, first, an express prayer in his intervention praying that the property seized by the receiver, pointed out by him in his intervention, be decreed to be the property of the partnership, and, second, the finding of the court in the first part of the decree, 'that the assets now in the hands of the receiver appointed in this case are assets of the said partnership,' he was entitled to a decree that neither Zachry nor the Industrial Loan & Investment

Company, each having a bill of sale from Alfred Mabry individually covering this identical property, has or had any valid claim against the assets of said partnership, except such as is decreed to be inferior to that of David T. Bussey; and plaintiff in error says that it was an error of law not to include such a finding in said decree." This assignment is without merit. The articles of partnership signed by both Bussey and Mabry evince that a partnership was actually formed. There is no evidence contradictory of this; or if there be any other, it is inferior to the evidence in writing. *Judgment affirmed.* *All the Justices concur.*