## 29513.   PHELPS *v.* HOUSE.

DECIDED JULY 9, 1942.    REHEARING DENIED JULY 30, 1942.

*T. B. Higdon,* for plaintiff in error.    *H. C. Holbrook,* contra.

SUTTON, J.    W. C. House brought suit against Mrs. Mildred C. Phelps and Mrs. Theresa Robards in which he sought to recover damages from Mrs. Phelps in the principal sum of $4800 principal and $1700 interest for the alleged breach of a provision in a deed which he had executed to her to certain described improved realty at 627 East Lake Drive in DeKalb County, Georgia, and to cancel a loan deed alleged to have been executed by Mrs. Phelps to Mrs. Robards, a non-resident, covering the same property.    Service was not had on Mrs. Robards, and she was later dismissed as a party defendant, leaving the case to proceed as one at law.    The provision of the deed alleged to have been breached by Mrs. Phelps, as

shown by a copy of the deed attached to the petition as an exhibit and made a part of the petition, was as follows: "The grantee herein assumes a loan of five thousand, four hundred ($5400) dollars, payable to Mortgage Guarantee Company of America, dated September 19, 1928, and due five years from date, bearing interest at seven (7) per cent. per annum, interest notes payable semi-annually, two hundred dollars annual reduction." It was alleged that Mrs. Phelps failed and neglected to pay a $200 note due September 1, 1932, and a $4600 note due September 1, 1933, and that on April 12, 1938, the National Bondholders Corporation (successor to Mortgage Guarantee Company) brought suit in the superior court of Fulton County against the plaintiff on the two said notes aggregating the principal sum of $4800. Mrs. Phelps was properly vouched into court, but failed to appear and make any defense, and on June 21, 1939, verdict and judgment were rendered against the present plaintiff for $4800 principal and $1700 interest, which judgment was, at the time of the bringing of the present suit, unpaid.

The record shows that Mrs. Phelps demurred on several grounds to the petition, and that the demurrers were overruled and no exception taken. She also filed an answer denying the substantial allegations of the petition, and set up that, if any transaction was had with her as alleged by the plaintiff, it constituted an attempt to bind her separate estate by a contract of suretyship or by an assumption by her of the debt of her husband or of the plaintiff, and that any conveyance executed by her in furtherance of such transaction is void and the alleged assumption by her of the indebtedness covered by any loan deed to the Mortgage Guarantee Company was void, she being then married to W. D. Phelps. Thereafter she amended her answer by alleging that the purported conveyance to her of the property known as 627 East Lake Drive was not in fact a sale or transfer of the property but was merely a part of a device or scheme resorted to by her husband, W. D. Phelps, for the purpose of securing a loan on the property which belonged to him; that her husband was unable to renew a loan previously made on the property, and which was becoming due, and unable to obtain a new loan in his own name, and an arrangement was made between him and the plaintiff by which the title was to be transferred to the plaintiff and a loan on the property

obtained in his name; that no consideration was paid by the plaintiff to her husband for the transfer of the title to him, and that the deed was voluntary and for the purpose stated; that she paid no consideration to the plaintiff for the transfer of the title to her, and that these transfers were merely a part of a scheme or device to obtain a new loan on the property of her husband and to have her assume the payment of the loan as surety for any liability that might accrue against the plaintiff; that the deficiency judgment obtained against the plaintiff has been paid off and satisfied for the sum of $750; that the plaintiff could have prevented any deficiency judgment by attending the foreclosure sale of the property, which was easily of the value of the amount remaining due on the loan when foreclosed, and that he did not attend the sale or procure any one to bid on the property, and that it was bid in, as she is informed, for the sum of $500 by the National Bondholders Corporation; that the title remained in her husband until the foreclosure as aforesaid.

Upon the trial of the case the jury returned a verdict in favor of the plaintiff for $945.35 and judgment was entered accordingly. The defendant filed a motion for new trial on the general grounds and by amendment added several special grounds. The court overruled the motion, and the exception here is to that judgment.

The case as made on the trial was substantially as follows: The property here involved was owned in 1927 by W. D. Phelps, the husband of the defendant. A loan placed by him on the property was maturing. The creditor was unwilling to renew the loan, and to prevent foreclosure Phelps undertook to obtain a loan from other sources. He had failed in business and was unable to obtain a loan in his own name. He deeded the property to his wife but no consideration was paid him. He then made an application in her name for a loan from Mortgage Guarantee Company but it was not approved. He then had her to make a warranty deed to W. F. Moore, in order that in his name a loan might be obtained, but Moore was unable to accomplish it. Phelps then suggested to his friend, W. C. House, the present plaintiff, that he take a deed to the property and obtain a loan in his name. House agreeing, Moore then executed a deed to him, and House did obtain a loan of $5400 from the Mortgage Guarantee Company. House, at Phelps's request, then deeded the property to Mrs. Phelps, Phelps

still being in financial difficulties, and in the deed the assumption clause hereinbefore mentioned was contained. The proceeds of the loan were given to Phelps and by him used to pay off the loan to which the property was subject when it was deeded to Mrs. Phelps. Phelps placed on record the deed which House executed to Mrs. Phelps. The loan obtained by House from the Mortgage Guarantee Company was evidenced by five notes, the first four being for the principal sum of $200 each and the last for $4600. During all of these transactions Phelps and his wife continued to live together at 627 East Lake Drive. After the loan was made by House, however, Phelps left the city, but sent from time to time to Mrs. Phelps certain funds which she used in paying the first three of the $200 notes which House had executed to the Mortgage Guarantee Company.

With respect to payments on the loan Mrs. Phelps testified: "Mr. Phelps furnished the money and gave the payments to me. He was out of town at the time and I met the payments with the money he gave me. Later on he could not get up the money for the difference, and the property was foreclosed. I stayed in the house while the sale was being made and the advertisement was made. I did not attend the sale and had no knowledge of the sale myself. Mr. House was sued on this loan in Fulton Superior Court. . . I heard him testify when they took his deposition in your [counsel's] office, and he stated in his deposition how much he paid in settlement of that judgment. The amount was $750. After seeing the deed [from her to W. F. Moore] I recollect making one that same year to Mr. Moore to this same property. As to whether after the deed was made to me by Mr. House after this loan I made several payments on the loan—Mr. Phelps gave me the money to do it, and I did. I got the letter from the Mortgage Guarantee Company dated October 11, 1931, which is addressed to me, and in response to it I paid some on the loan. I also got the notice from the Halifax Fire Insurance Company, addressed to me. I kept up all the payments until they foreclosed on me. I lived in the house two years after they foreclosed on me, and paid rent. I took receipts in my name from the Mortgage Guarantee Company and made payments on this loan under the dates of 9-29, 1931, and 10-17, 1931, until they foreclosed the loan, and I couldn't pay the notes and they foreclosed on me. As to whether

I recollect the date they foreclosed—no, sir. I might have a letter at home. . . As to another receipt dated 9-29, yes, sir. I paid them. Mr. Phelps gave me the money to pay them. Also receipts dated 4-15, 1932, 10-21, 1932, 11-10, 1932, 4-3, 1933, 10-27, 1931, and 10-20, 1931. As to a note for $200 that was due September 1, 1931, that was, I guess, when I couldn't meet the payments. I kept them all up. The notices were sent to me at the place where the property was, where I was living. I also paid another $200 note that was due September 1, 1929. . . I did not look this morning for the deed Mr. House made to me, but I think I have it. . . Mr. Phelps's money made all the payments on this loan. I didn't have it. . . What I meant when I said I stayed in the house after they had foreclosed was that I stayed in the house after the loan was foreclosed under the foreclosure proceedings."

The property sold by the Mortgage Guarantee Company under a power of sale contained in the deed to it was bid in by it for $500, neither House, Phelps, nor Mrs. Phelps being present. Thereafter the National Bondholders Corporation, as successor in interest to Mortgage Guarantee Company, brought suit in the superior court of Fulton County against House for the amount of the unpaid notes less the $500 received from the sale of the property. An answer in the name of House was filed to that suit by an attorney, F. L. Breen, but House testified in the present suit that he had not employed him. It appears that in the trial in which the National Bondholders Corporation sought a deficiency judgment against House he was represented by attorney H. C. Holbrook, his counsel in the present suit. In the suit brought by the National Bondholders Corporation House offered no evidence and judgment was rendered against him for the full amount of the indebtedness sued for, and after the present suit was brought by House against Mrs. Phelps, House, through his attorney, H. C. Holbrook, settled the judgment by the payment of $750 and $20.35 court costs. House testified: "As to how much attorney's fees I had to pay in the case in Fulton County—$175. . . Mr. Holbrook was the attorney representing me in the suit against me in Fulton County. . . Mr. Holbrook represented me in the Fulton superior court and also in the case in DeKalb County that is being tried now, for which I paid him $150. I paid Mr. Breen $25. I didn't have Mr. Breen employed. He claimed Mr. Phelps owed him $25 and he explained

it so Mr. Holbrook could understand it, and I paid him $25. I don't know why Mr. Holbrook's name was not signed to the answer in the Fulton County case. There was a jury trial in it and Mr. Holbrook represented me at the trial. . . These are the dates I made payments to Mr. Holbrook. . . The payments were of $50 each. The first one is May 3, 1939, the next is June 28, 1939, and the next is May 27, 1941. The first one was on his fee in the suit in Fulton superior court. As to whether any fee has been paid Mr. Holbrook in the case we are trying now—no, sir, I have never paid him any fee for the trial of this case. The first $150 was for the case in Fulton County. As to whether I stated just now that the first fee was paid in the Fulton County case and the last two for services in the DeKalb County case which we are now trying—well, I don't know how it is; this is what I paid, $150. As to whether the last two payments were made after this suit had been filed in DeKalb County—I don't know whether it was after or before. When I got $50 ahead I would give it to Mr. Holbrook. It was what I owed him on the fee for the suit in Atlanta. . . Mr. Holbrook and I tried the case at the court house. The verdict was directed and I was not sworn and did not testify. As to whether or not Mr. Holbrook assisted in getting a settlement of the $5000 judgment down to $750—yes, sir, he assisted in getting a $5000 judgment settled for $750."

The present case is not one which, as the plaintiff in error contends, involves the application of legal principles which have as their object the imposition of limitations upon the power of a married woman to pledge her property or to become surety for another. It is an instance, as we shall show, of the right of a married woman to protect her property by the removal of an encumbrance placed upon it by her husband as owner before deeding the property to the wife. Admittedly, the husband was, in 1927 or 1928, the owner of the property here involved. He had placed upon it a loan which was payable to a third party not in any wise interested in the present litigation. The husband deeded the property to the wife. That deed is not attacked by any creditor, and as between the husband and the wife must be treated as a valid conveyance. The fact that, as set up by the defendant wife, the act of the husband in conveying the property to her was the beginning of a plan contrived to accomplish the removal of an existing lien is not material to the

merits of the present controversy. By that conveyance the wife became vested, for the first time, with title to the property, subject to the outstanding indebtedness in favor of the original lienee. To rid the property of such encumbrance, even though it was placed thereon by her grantor husband, she had the capacity and the right to borrow on it directly, or through successive conveyances to enable another to borrow on it, for the purpose of obtaining funds with which to discharge the first or original obligation or lien, and to give, or allow to be given to her husband for her, the proceeds for such use. As stated in *Lowenstein* v. *Meyer,* 114 *Ga.* 709, 711 (40 S. E. 726): "While it is true that a wife may not ordinarily assume the debts of her husband, it is well settled that she may, when she purchases property from her husband, pay off any lien thereon which was created by the husband, removal of which is necessary to give her an unencumbered title to the property." See also *Anderson* v. *Higginbotham,* 174 *Ga.* 565 (3) (163 S. E. 477), and cit. "In such a case, she does not discharge the lien because it represents the husband's debt, and the consideration which moves her is not a purpose to relieve him of the indebtedness, but to free her own property from an existing encumbrance." *Daniel* v. *Royce,* 96 *Ga.* 566, 568 (23 S. E. 493); *Lunsford* v. *Kersey,* 191 *Ga.* 738, 745 (13 S. E. 2d, 803). Furthermore, "a married woman may lawfully borrow money and give it to her husband to apply in satisfaction of his debts, provided the lender receives no part of the money as a creditor of the husband." *Allen* v. *National Bank of Tifton,* 14 *Ga. App.* 299 (80 S. E. 697). Many other authorities might be cited to the same effect.

There was evidence that after receiving the deed to the property the wife, at the instance of the husband, deeded it to W. F. Moore in order that he might attempt to do what neither she nor the husband, because of insufficient credit rating, was unable to accomplish, i. e., the placing of a loan upon the property to raise funds with which to pay off the first encumbrance; that Moore was unsuccessful in this respect; that Moore, at the instance of the husband, deeded it to W. C. House, the present plaintiff, who, out of friendship for the husband and upon his representation that the property had cost more than twice the amount of the loan sought, obtained a loan of $5400 from the Mortgage Guarantee Company, after which he deeded the property back to Mrs. Phelps by an in-

strument containing a provision of assumption by her of the loan placed by House upon the property. The husband used the proceeds of the loan in paying off the first encumbrance, and thus the property remained unencumbered except as to the loan of $5400. Where one by a deed conveys real property, and included in the conveyance is a statement that the grantee assumes a certain debt owed by the grantor, and the grantee accepts the deed and enters into possession of the property conveyed thereby, the transaction makes a contract between the parties obligating the grantee to pay the debt assumed, although he does not sign the instrument. *Smith* v. *Kingsley,* 178 *Ga.* 681 (173 S. E. 702).

Even though the transactions recited be termed a "scheme," as plaintiff in error contends, to enable her to pledge her property to pay off a debt made by her husband, it is not, for reasons above shown, such a device as the law forbids, and if she in fact knowingly entered into the plan or "scheme" without compulsion or fraud practiced upon her in signing her deed, accepted the deed from House and assumed the loan made by him, she is bound by her contract. The evidence shows that she was properly vouched into court in the suit against House for a deficiency judgment. "Where a defendant may have a remedy over against another, and vouches him into court by giving notice of the pendency of the suit, the judgment rendered therein shall be conclusive upon the party vouched, as to the amount and right of the plaintiff to recover." Code § 38-624. "The first judgment conclusively establishes the relationships and liabilities existing between the original parties as to the cause of action asserted in the first suit, but does not determine the relationships and liabilities between the party vouching and the person vouched, as to that cause of action, except so far as those relationships and liabilities are necessarily involved in the first suit, and in the judgment rendered therein. The relationship between the voucher and the vouchee may arise by contract, express or implied, or by operation of law. . . The voucher, notwithstanding the judgment in the first suit, still has the burden of showing that the vouchee bears that necessary relationship to him and to the cause of action, as asserted in the original suit, essential to give an action over; and the vouchee may defend by showing anything which will negative the right of an action over." *Mc-Arthor* v. *Ogletree,* 4 *Ga. App.* 429, 432, 433 (61 S. E. 859). It

is shown by the record that judgment was obtained against House for $4800 principal and $1700 interest, and that the deed which he executed to Mrs. Phelps contained a clause wherein she assumed House's debt. She defends against liability, though admitting that she was properly vouched into court, by contending that while she executed the deed to W. F. Moore she knew nothing of the deed. from him to House; that the deed from House to her was planned and put into effect without her knowledge and consent, and was delivered to and recorded by her husband and that she took no part in the transaction, did not accept the deed or take possession under it, and that while she made certain payments on the loan obtained by House on the property all of the money was furnished by her husband.

We think that the jury was authorized to find that in all of the transactions arranged by her husband he was acting as the agent of Mrs. Phelps, and that she concurred in and ratified all that was done for her benefit. She knew of the loan on the property before it was deeded to her by her husband. She accepted from him a deed subject to that encumbrance. She willingly signed a deed to W. F. Moore for the reasonably inferable purpose of enabling him to obtain a second loan to rid her property of the first encumbrance. She professes ignorance of the making of the deed by House to her, and of the assumption clause in the deed, and contends that the mere recording of that instrument by the husband is not conclusive evidence of her acceptance of the deed and the assumption of the loan of House, and states that she continued in the house only because she was there as the wife of the possessor husband. But the evidence shows that she held the deed after it was recorded, and that when Phelps left the city she continued to live in the house. She being already in the house, the law, to show possession after the deed was recorded, would not require the doing of a useless thing, that is, an abandonment of the premises and then an express entry, and the jury would be authorized to find from her subsequent conduct that she was cognizant of the making of the deed by House, the assumption clause, the recordation of the deed, and that she was in possession under a claim of right. She received notices in her own name of payments due on the loan obtained by House. She responded by making numerous payments thereon. The fact that, as contended by her, the payments were

made with funds sent to her by Phelps is not inconsistent with the theory that she made the payments in her own name and benefit, and in recognition of her liability under the assumption clause of the deed which she held. The receipts were taken in her own name.

It developed on the trial of the case that House had succeeded in settling the judgment in the suit against him for only $750, and the defendant contended to the court that, if recovery were allowed, it should be limited to the amount of actual damage suffered. The plaintiff thereupon contended that if recovery were so restricted he should be allowed to recover, as part of his actual damage, court costs of $20.35 paid by him in the suit for a deficiency judgment and also attorney's fees in the amount of $175. In the progress of the case the defendant moved to rule out all evidence as to attorney's fees, whereupon the court ruled, "I will overrule your motion under the circumstances of the case as developed under the evidence," and submitted the case to the jury as to recovery for actual damage. The jury returned a verdict for $945.35, which included the $750 paid by House in settlement of the deficiency judgment, $150 paid by him to his attorney for representing him in the case in which such judgment was obtained, and who assisted him in settling the judgment for $750, $25 paid to an attorney whom House testified he had not employed but who was shown to have filed an answer in that suit, and $20.35 court costs paid by House. House testified that the amount of $25 was a debt of Phelps and that he paid it under directions of his counsel. The verdict of the jury was authorized except as to the sums of $25 and $150. The sum of $25 was paid to one whom House testified he had not employed, and there was no evidence that the amount of $150 attorney's fees was a reasonable charge. In the judgment of this court direction is being given that the sum of $175 be written off of the verdict and judgment; otherwise the judgment of the trial court is reversed.

Special ground 1 of the motion for new trial complains that the court erred in permitting the plaintiff to testify that he had paid court costs of $20.35 in the suit filed against him for a deficiency judgment after the property here involved had been foreclosed and had paid $175 as attorney's fees, it being contended that no such expenses had been pleaded. Inasmuch as the defendant invoked a ruling from the court that the plaintiff should not be allowed to

recover more than actual damage he suffered by reason of the loan not being paid by the defendant under the assumption clause of the deed to her, and the court submitted the case to the jury on that theory instead of submitting the contentions made by the plaintiff's petition that judgment had been rendered against him for $4800 principal and $1700 interest, the plaintiff was entitled to show whatever court costs and reasonable attorney's fees he had paid, in addition to the sum of $750 which he had paid in settlement of the judgment. The sum of $20.35 was a legitimate item of recovery as court costs, but the court erred in not ruling out the testimony as to the amounts of $25 and $150, making up the total of $175 as alleged attorney's fees, for the reason that, according to House's testimony, the $25 was not paid to an attorney employed by him, and there was no evidence that the sum of $150 was a reasonable charge for attorney's fees. Direction is being given that the sum of $175 be written off of the verdict and judgment; otherwise the judgment of the trial court is reversed.

Special ground 2 of the motion complains of a portion of the charge of the court which in part is not applicable to the issues in the case, but which, under the rulings hereinbefore made, was not harmful to the defendant, and no special discussion is deemed necessary.

Special ground 3, complaining that the court failed to include in its charge a statement of the contentions of the parties, is without merit. While the court did not state in detail the contentions of the parties, it is shown by its charge that counsel for each party had stated their respective contentions to the jury, and that for this reason the court informed the jury that it was not necessary for the court to repeat them and that they would refer to the pleadings in numbered paragraphs of each party to further acquaint themselves with the respective contentions. Under the circumstances no error is shown.

The contention of the plaintiff in error in ground 4 of the motion for new trial that the court did not sufficiently refer to her defenses in stating to the jury that in referring to the defendant's answer the court meant "the defendant's answer as amended," in that the defendant's original answer included defenses which were not set forth in the amendment to her answer, is without merit. An answer as amended is not an amendment, but means a pleading

884

which includes the original answer and the amendment. It can not reasonably be assumed that the jury misunderstood the court's reference to the defendant's contentions, especially as elsewhere in its charge the court stated "you will find the contentions of the defendant in the defendant's answer and amendment," etc.

The excerpt of the charge of the court complained of in ground 5 was not harmful to the defendant.

Special ground 6, complaining of the charge of the court as to allowance of attorney's fees, does not require a ruling inasmuch as direction is being given that the amount of attorney's fees be written off of the verdict and judgment.

The charge of the court was full and fair, and, while it contained some instructions which were not applicable to the issues in the case, still, when taken in its entirety, it shows that it was not harmful to the defendant and could not have been confusing or misleading to the jury as to the issues in the case.

*Judgment affirmed, with direction that the sum of $175 be written off the verdict and judgment; otherwise the judgment is reversed. Stephens, P. J., concurs.*

FELTON, J., dissenting. The court charged the jury as follows: (1) "Now, gentlemen, a married woman may give her property or money to her husband that he may pay his debts with it, in the absence of fraud; and where a gift is shown, then in order to repudiate that the burden of proving fraud rests upon the married woman. She may borrow money to be used by her husband to pay his debts, provided the husband's creditor is not the lender of the money borrowed by her. She may sell her property to get money to pay her husband's debt, and the purchaser, if he is not the husband's creditor, gets a good title, although he may know the purpose for which she is selling the property. She may legally procure a third person to pay the debt of her husband, and would be bound by her contract to reimburse him for so doing, that is, for paying the debt of her husband." (2) "Now, in further connection with those principles of law, gentlemen, I charge you the provision of our Civil Code, that no contract of sale of a wife as to her separate estate with her husband shall be valid unless the same is allowed by order of the superior court of her domicile, has no application to an executory agreement of a wife to pay the debt of her husband, owed by him to a third person as consideration expressed

in a deed by the husband to a wife conveying realty on which the debt was an outstanding encumbrance; and I charge you, gentlemen, that while a married woman may contract, she can not bind her separate estate by any assumption of the debts of her husband. Ordinarily, if a wife buys land from her husband, she may, without contravening the foregoing limitation upon her right to contract, agree with him to pay the purchase price by the assumption and payment of an existing debt of her husband to a third person which is an encumbrance upon the land." Neither of the two charges was authorized by the evidence, and might easily have confused and misled the jury on the main question in the case, to wit, whether or not the circumstances showed a mere scheme to have Mrs. Phelps become obligated to pay the debt of her husband.